## C. H. COVELL *vs.* T. J. LOUD & another.

Suffolk.    Feb. 1. — April 6, 1883.    FIELD & W. ALLEN, JJ., absent.

If a broker agrees to buy and hold certain stock for a customer, who pays a part of the purchase money, agreeing to pay interest on the sums advanced by the broker, and, in case the stock depreciates in value, to make a "margin" of a certain sum per share in excess of the market price, this does not create the relation of pledgor and pledgee between the parties; and if, after the failure of the customer to make the necessary advances upon demand, the stock having depreciated in value, the broker sells the same at the brokers' board without notice to the customer, he is not liable for a conversion of the stock.

TORT, for the conversion of twenty-five shares of the capital stock of the Manhattan Elevated Railway Company. Trial in

the Superior Court, without a jury, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows :

There was evidence tending to show, and the judge found, the following facts : The defendants, who were stock-brokers, doing business in Boston, bought for the plaintiff, on his order, on February 12, 1881, the stock in question, at $43.50 per share. The plaintiff, at the time of purchase, paid the defendants $250 on account of the stock, and they agreed to carry the stock for him, charging him interest on the balance of the purchase money due to them; and the plaintiff agreed to pay to them such other sums of money as might be needed, in case the stock fell in the market, to make a margin of $10 per share in excess of the market price of the stock. There was no agreement to carry the stock for any definite time. Soon after the purchase, the stock began to decline, and the plaintiff, at the request of the defendants, paid them the further sum of $50. The stock continuing to depreciate in value, the defendants, on April 11, 1881, requested the plaintiff to make his margin good by the payment of more money. The plaintiff did not do so, and told the defendants that he could pay them no more money, and asked them to do the best they could for him; to which they replied that they would. A few days after said April 11, the stock having continued to decline, and having fallen to $21.50 per share, the defendants, without notice to the plaintiff, sold the stock at the brokers' board in New York at $21.50 per share, which was its market price at the time of sale; and, after crediting the plaintiff with the proceeds of the sale, there remained due from the plaintiff to the defendants, on account of said stock, a balance of about $285. No notice was given to the plaintiff of the sale of the stock, and no request was made for the payment of the balance due to the defendants until about December 7, 1881, when the plaintiff, the stock then being of the value of $57 per share, demanded it of the defendants, and offered to pay them the balance of the purchase money and interest.

There was also evidence tending to show, and the judge found, that, at the time of the purchase of the stock by the defendants, there was a uniform and well-established usage among the stock-brokers of Boston, known to the plaintiff, to sell stock at the

brokers' board which was being carried on a margin, as soon as the margin was exhausted, and without notice to the parties for whom the stock was being carried. The plaintiff knew the market price of the stock in question from April 11 until December 7, 1881, during which time he did not see the defendants, or communicate with them in any way.

The defendants asked the judge to rule that, upon these facts, this action could not be maintained. The judge declined so to rule; ruled that, after the purchase of the stock, the legal relation between the parties was that of pledgor and pledgee, that the sale of the stock without notice to the plaintiff was a conversion by the defendants of the property of the plaintiff; that the usage of brokers to sell stock so held without notice was illegal; and that the plaintiff was entitled to recover of the defendants, as damages, the value of the stock at the time of the demand, less the balance due to the defendants on account of their advances and interest; and found for the plaintiff in the sum of $605.25. The defendants alleged exceptions.

*F. T. Crommett & E. O. Bicknell*, for the defendants.

*C. H. Chellis & C. B. Hibbard*, for the plaintiff.

DEVENS, J. The relation of the parties existed by force of a mutual and dependent contract, by which the defendants agreed to purchase and hold, or carry, for the plaintiff a certain number of shares of stock, he paying a certain sum of money at the time, agreeing to pay interest on the sums advanced by the defendants, and, in case the stock depreciated, to make what is termed a margin of $10 per share in excess of the market price of the stock, as that might change from time to time. As the plaintiff failed to perform his part of the contract by making the necessary advances upon demand, the stock having rapidly depreciated in value, he has no ground of complaint that the defendants ceased to hold and carry it for him, and thereafter disposed of it.

We are aware that transactions of this nature have sometimes been held to make the broker who purchases the stock an agent for the customer, and to treat him as holding it thereafter as a pledgee for the money advanced for its purchase. *Markham* v. *Jaudon*, 41 N. Y. 235. *Stenton* v. *Jerome*, 54 N. Y. 480. *Baker* v. *Drake*, 66 N. Y. 518. *Gruman* v. *Smith*, 81 N. Y. 25. But

in *Wood* v. *Hayes*, 15 Gray, 375, it was held that a broker who advanced money to buy stock for another, and held it in his own name, might, so long as he had not been paid or tendered the amount of his advances, pledge it as security for his own debt to a third person, without making himself liable to an action by his employer, and this upon the ground that the contract was conditional to deliver the shares upon the payment of the money. It cannot make any difference that, in this case, a small portion of the money necessary for the original purchase was advanced by the customer.

If the transaction were treated as creating a pledge, we should here, upon the facts as they appear, reach a similar result. When the money to be paid or the thing to be done is not paid or performed, the pledgee may not only dispose of the pledge by public auction, as provided in the Pub. Sts. *c.* 192, §§ 10, 11, but may also do so " in any other manner allowed by the contract or by the rules of law." Pub. Sts. *c.* 192, § 12. When the plaintiff was called on to make good his margin, by advancing the necessary sums, he told the defendants that he could pay them no more, and requested them to do the best they could for him. This was sufficient to give them authority to sell the stock, if in so doing they acted fairly, and with proper regard to the interests of the plaintiff. Nothing appears tending to show that they acted otherwise.

We have not deemed it necessary to consider whether a usage of brokers, known to the plaintiff, to sell stocks which are carried on a margin when the customer fails to make the advances agreed, is to be treated as forming a part of the contract; nor whether a contract like this of buying stocks on a margin is to be deemed so contrary to the policy of the law that neither party can maintain any action against the other for breach of it.

*Exceptions sustained.*