MELVILLE M. WESTON, assignee, vs. EBEN D. JORDAN.

Suffolk.   March 9, 10, 1897. — May 21, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Insolvent Debtor — Preference — Purchase of Stock on Margin.*

If shares of stock are bought through a broker, to whom a part of the purchase price is paid as a margin, and he, having undertaken to carry the stock for the purchaser, fails so to do, and on demand is unable to deliver it, and the purchaser subsequently pays the balance of the purchase price, and, knowing or having reason to know that the broker is insolvent and that he has bought the stock in the market, receives from him the stock bargained for, which is then worth more than the sum paid by him, this transaction, to the extent of the excess of the value of the stock so delivered above the sum paid to the broker, is a preference in violation of Pub. Sts. c. 157, § 96.

TORT, by the assignee in insolvency of Philip D. Wheatland, to recover the difference between certain sums of money paid to Wheatland by the defendant on October 9, 11, and 18, 1889, and the then market value of certain shares of stock which it was alleged Wheatland had transferred and delivered on those dates to the defendant, with a view to giving a preference in violation of the insolvent laws. The action was commenced on October 25, 1894, and, upon the death of the defendant on November 15, 1895, his executors appeared and defended.

At the trial in the Superior Court, before *Lilley*, J., there was evidence that Wheatland, prior to his insolvency in November, 1889, was a stockbroker, doing business in Boston; that, at various times during the years 1888 and 1889 he had, at the defendant's request, purchased for him 3,500 shares of stock of the Chicago, Burlington, and Quincy Railroad Company, for which, as purchased, the defendant paid margins of about ten

dollars upon each share; that on May 24, 1889, of these shares 500 had been sold, and on June 7, 1889, 500 had been fully-paid for by the defendant and delivered to him; that between the latter part of June, 1889, and the following October, the defendant repeatedly asked Wheatland for the remaining shares of stock purchased for him, but that Wheatland put him off with various excuses, generally saying that it was not convenient; that after July 1, 1889, Wheatland ceased to hold the 2,500 shares bought for the defendant, and had no stock of that description under his control except such as passed through his office in consequence of dealings for customers other than the defendant; that in the summer of 1889, subsequent to June 7, he became insolvent, and on November 18, 1889, a petition in insolvency was filed against him, and on December 6, 1889, the plaintiff was chosen assignee, but Wheatland's credit was not questioned, nor his business paper protested, until after October 30, 1889; that on October 9, 11, and 18, 1889, respectively, the defendant paid to Wheatland three several sums of $48,000, $49,000, and $21,227.24, for which, on each of the first two dates, he received 500 shares, and on the last 200 shares of the stock of the Chicago, Burlington, and Quincy Railroad Company; that the market value of the shares so delivered on October 9 and 11 was $54,018.75 and $54,000 respectively, and of those delivered on October 18 was $21,400; and that those prices were paid by Wheatland, who purchased the stock through other brokers. There was also evidence that between July 1 and October 9, 1889, the defendant, who insisted upon having the particular shares purchased by him, had reason to know that Wheatland had ceased to hold any of the 2,500 shares originally purchased for him, but the defendant contended, and there was evidence tending to show, that he supposed that the stock had been pledged.

The defendant requested the judge to instruct the jury:

"1. That upon the evidence the plaintiff was not entitled to recover. 2. That if the defendant's testator purchased certain shares of stock through Philip D. Wheatland, a stockbroker, giving said Wheatland certain moneys in part payment thereof, with the agreement or understanding that said Wheatland was to hold said stock until the same was fully paid for by the

defendant's testator, or sold by him, the relation between the defendant's testator and said Wheatland is that of pledgor and pledgee. 3. If the defendant's testator purchased through Philip D. Wheatland, a stockbroker, and while said Wheatland was solvent, certain shares of stock, giving Wheatland certain moneys in part payment thereof, and if he subsequently paid the balance of the purchase price and took the stock, he is entitled to hold it against said Wheatland's assignee in insolvency, although he may have had reason to know that said Wheatland was insolvent at the time the shares were so ultimately paid for and taken. 4. That if the defendant's testator purchased through Philip D. Wheatland, a stockbroker, and while said Wheatland was solvent, certain shares of stock, giving said Wheatland certain moneys in part payment thereof, with the agreement or understanding that said Wheatland was to carry the same until fully paid for by the defendant's testator, or sold by him, and subsequently the defendant's testator paid for said shares in full, and received them from said Wheatland, the plaintiff cannot recover in this action without satisfying the jury that the defendant's testator knew that said Wheatland did not have said shares in his possession or under his control at the time he so transferred them to the defendant's testator. 5. It is immaterial that Philip D. Wheatland, the broker, did not at the time he transferred the shares of stock in question have them actually in his possession, or under his control, if that fact was not communicated to the defendant's testator. 6. The plaintiff cannot recover unless he proves to the satisfaction of the jury that at the time of the transactions in question an indebtedness existed, and was recognized to exist, from Wheatland to Jordan, and that something was given in payment or part payment thereof, contrary to the provisions of the Massachusetts insolvent law. 7. In order to recover, the plaintiff must show that at the time of the transaction in question a debt was due from Wheatland to Jordan, or a claim existed of Jordan against Wheatland. 8. The amount claimed here, being the difference between the market price of the stock in question and the balance due upon it, was not a debt from Wheatland to Jordan, nor a claim of Jordan against Wheatland at the time of the transactions in question. 9. If Wheatland in transferring the stock in question to Jordan in-

tended simply to carry out his contract with Jordan, and not to give him a preference, the plaintiff cannot recover."

The judge refused to give the first, second, and eighth requests for instructions, but gave the fourth, fifth, sixth, seventh, and ninth requests, and the third with the following qualification : " If Jordan, knowing nothing of Wheatland's disposition of these shares which he had bought for him pursuant to his order, knowing nothing of Wheatland's inability to deliver those or any other shares to him, supposed at the time when he paid these sums to Wheatland on October 9, 11, and 18, that he was paying the balance of the purchase price of the stocks when they were bought by Wheatland."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*B. L. M. Tower*, (*F. A. North* with him,) for the defendant.

*R. M. Morse*, (*M. M. Weston* with him,) for the plaintiff.

ALLEN, J.   The defendant contends that the relation between Jordan and Wheatland was that of pledgor and pledgee, and that the transactions complained of by which Jordan paid to Wheatland the balance of the cost of the shares and received from Wheatland the shares were entirely legitimate, being merely a carrying out of the contract upon which the shares were bought, and not voidable as a preference under the insolvent laws.

When a broker buys shares on a margin and carries them for his customer, it has been held in some States that the relation between the customer and the broker is that of pledgor and pledgee. *Markham* v. *Jaudon*, 41 N. Y. 235.   *Skiff* v. *Stoddard*, 63 Conn. 198.   *Brewster* v. *Van Liew*, 119 Ill. 554.   This view has not hitherto been accepted in Massachusetts.   *Wood* v. *Hayes*, 15 Gray, 375.   *Covell* v. *Loud*, 135 Mass. 41.   The defendant seeks to have these decisions reconsidered; but the facts of the present case do not call for such reconsideration of the general doctrine.   Even if at the outset Jordan were to be deemed a pledgor, and Wheatland a pledgee, of the shares, that relation was changed by what happened afterwards.   The bill of exceptions recites that it appeared in evidence that, between the latter part of June, 1889, and the transactions in question in October, 1889, Jordan repeatedly asked for the shares bought for him by Wheatland, and that Wheatland put him off with various ex-

cuses, generally saying that it was not convenient; that some time in the summer of 1889 subsequently to June 7, Wheatland became insolvent; and that subsequently to July 1, 1889, Wheatland had no stock of this kind under his control, except such as passed through his office in consequence of dealings for other customers. Under the doctrine as held in New York, Wheatland was bound always to have on hand enough shares to meet the purchase for Jordan. *Taussig* v. *Hart*, 58 N. Y. 425. *Baker* v. *Drake*, 66 N. Y. 518. And if the shares were sold, Jordan might require him to replace them and hold him responsible for a failure to do so. *Colt* v. *Owens*, 90 N. Y. 368. After Wheatland had parted with the control of the shares, and after repeated demands for them by Jordan and refusals by Wheatland to deliver them, Jordan had a valid ground of action against Wheatland, either for breach of contract or for a conversion; it matters not which. If Wheatland had refused on demand to deliver the shares when they were high, and they had afterwards fallen in value, we cannot accede to the defendant's contention that Wheatland could still have compelled Jordan to take them up, and pay the balance of the cost. But Jordan's right of action against Wheatland had accrued; and this was a debt which would be provable in insolvency against Wheatland. Pub. Sts. c. 157, § 26. *Lothrop* v. *Reed*, 13 Allen, 294. Therefore, when by later transactions he transferred to Jordan valuable rights, namely, shares bought by him in the market which were worth more than Jordan paid to him, Jordan was not regaining control of property which in any sense belonged to him, but he was obtaining a preference to the extent of such excess of value. He became richer and Wheatland became poorer by just that amount.

It is however contended that it did not appear as a fact that Jordan knew that Wheatland had sold the shares, but that there was evidence tending to show that he supposed Wheatland had pledged them, and that Jordan insisted upon having his particular shares, and actually paid the money for them. But the instructions given to the jury fully saved to the defendant the benefit of this ground of contention. Those instructions were as follows, the court adopting the defendant's requests upon this subject, with a certain qualification:

" If Jordan purchased through Philip D. Wheatland, a stock-broker, and while said Wheatland was solvent, certain shares of stock, giving Wheatland certain moneys in part payment thereof, and if he subsequently paid the balance of the purchase price, and took the stock, he is entitled to hold it against said Wheatland's assignee in insolvency, although he may have had reason to know that said Wheatland was insolvent at the time the shares were so ultimately paid for and taken ; if Jordan, knowing nothing of Wheatland's disposition of these shares which he had bought for him pursuant to his order, knowing nothing of Wheatland's inability to deliver these or any other shares to him, supposed at the time when he paid these sums to Wheatland on October 9, 11, and 18, that he was paying the balance of the purchase price of the stocks when they were bought by Wheatland.

" If Jordan purchased through Philip D. Wheatland, a stock-broker, and while said Wheatland was solvent, certain shares of stock, giving said Wheatland certain moneys in part payment thereof, with the agreement or understanding that said Wheatland was to carry the same until fully paid for by Jordan, or sold by him, and subsequently Jordan paid for said shares in full, and received them from said Wheatland, the plaintiff cannot recover in this action without satisfying the jury that Jordan knew that said Wheatland did not have said shares in his possession or under his control at the time he so transferred them to Jordan.

" It is immaterial that Philip D. Wheatland, the broker, did not at the time he transferred the shares of stock in question have them actually in his possession, or under his control, if that fact was not communicated to Jordan.

" The plaintiff cannot recover unless he proves to the satisfaction of the jury that at the time of the transactions in question an indebtedness existed, and was recognized to exist from Wheatland to Jordan, and that something was given in payment or part payment thereof, contrary to the provisions of the Massachusetts insolvent law.

" In order to recover, the plaintiff must show that at the time of the transaction in question a debt was due from Wheatland to Jordan, or a claim existed of Jordan against Wheatland.

"If Wheatland in transferring the stock in question to Jordan intended simply to carry out his contract with Jordan, and not to give him a preference, the plaintiff cannot recover."

These instructions virtually adopted the defendant's view of the law, and certainly were sufficiently favorable to him. Indeed, they gave to the defendant all the benefit he would derive from the theory that the relation between Jordan and Wheatland at the outset was that of pledgor and pledgee. They required the jury, in order to render a verdict for the plaintiff, to find various facts which contained all the elements of a preference. Stating the doctrine generally, if a person has bought certain shares of stock through a broker, and has paid to the broker part of the purchase price as a margin, and the broker has undertaken to carry the stock for him, but has failed to keep the same or any shares of that kind of stock in his hands, and has been unable and has refused to deliver such shares to the customer on demand, and the customer subsequently pays to the broker the balance of the purchase price and receives from him the number of shares bargained for, which are then worth more than the sum which he pays, knowing or having reasonable cause to know that the broker is not then solvent, and that he has procured the shares by purchase in the market, this is a preference, and in violation of the insolvent laws, to the extent of the excess of the value of the shares so delivered above the sum then paid to the broker therefor.

This being our view of the law, we understand that the defendant's exceptions to the admission of evidence are not insisted on.

*Exceptions overruled.*