In re SWIFT et al.

(District Court, D. Massachusetts. December 17, 1900.)

No. 2,745.

1. BROKERS—LAW GOVERNING CONTRACTS.

A contract with a broker for the purchase of stock on a margin is one which is governed by the laws of the state where it is made, as to the relations and rights of the parties thereto.

2. SAME—PURCHASE OF STOCK ON MARGIN.

Under the law of Massachusetts, as established by decision, a broker who has purchased stock on a margin for a customer is not a pledgee thereof to secure his advances, but his contract is conditional, to deliver so many shares of the stock on payment of the remainder of the purchase price; and he may pledge the stock for his own debt, or even sell it, without being guilty of conversion or of a breach of the contract, until a demand has been made by the customer and refused.

**3. SAME—BREACH OF CONTRACT.**

> Where a broker in Massachusetts, who had purchased stock on a margin for a customer, made a general assignment by which he transferred the stock to his assignee, such action did not constitute a conversion of the stock or a breach of his contract with the customer; but if it be considered a refusal to perform, which justified an action for the breach without demand of performance, the customer was not bound so to treat it, but might, at his option, treat the contract as subsisting.

**4. BANKRUPTCY—PROVABLE CLAIMS—DAMAGES FOR BREACH OF CONTRACT.**

> Where a broker who had purchased stock on a margin for a customer, and whose contract under the local law was to deliver such stock to the customer on demand and tender of the remainder of the price, was adjudicated a bankrupt, and the stock passed to his trustee, his customer may treat the contract as broken by the act of bankruptcy, and prove his claim for damages, which are to be determined as of the time of the adjudication.

In Bankruptcy.  On petition by trustee to reconsider allowance of the claim of a creditor.

The certificate of the referee was as follows:

I, James M. Olmstead, one of the referees of said court of bankruptcy, hereby certify that in the course of the proceedings in said cause before me the following question arose, pertinent to the said proceedings, to wit:

This was a petition filed June 21, 1900, by the trustee to reconsider the allowance of the proof of claim of James R. Dee, a creditor of said estate. The claim was allowed in the sum of eighty-three hundred sixty-seven and $^{65}/_{100}$ (8,367.65) dollars. The bankrupts, doing business as E. C. Hodges & Co., were stockbrokers in Boston, and followed the usual practice of brokers in buying stock for their customers and carrying the same upon margins. The creditor, James R. Dee, had dealt with the firm of E. C. Hodges & Co. in stocks, and the said bankrupts had pledged some or all of the stocks purchased on orders of said creditor with various banks, as collateral for loans. On the 27th of December 1899, the firm of E. C. Hodges & Co. made a voluntary assignment for the benefit of its creditors, and at the same time prepared and mailed notice thereof to its various creditors and customers. On or about the 10th of January, 1900, one of the firm wrote a letter to said creditor, referring to the "prospects of favorable settlement." On or about the 15th day of January, 1900, I find that the creditor, Dee, acknowledged the receipt of this letter of the 10th. On the 6th day of April, 1900, two members of the firm filed a voluntary petition, and asked that the firm be adjudicated bankrupt, and said firm of E. C. Hodges & Co. was subsequently adjudicated bankrupt.

The trustee claims that the securities for which E. C. Hodges & Co. were responsible to the creditor should be valued as of the time of the assignment, and that, if so valued, the claim should be reduced to the sum of sixty-six hundred fourteen and $^{15}/_{100}$ (6,614.15) dollars. The creditor, James R. Dee, contended that the securities should be valued as of the time of the commencement of the bankruptcy proceedings. This petition, therefore, presents the question as to whether the date of a voluntary assignment, or that of the commencement of the proceedings in bankruptcy, shall govern. Bankr. Act, 1898, §§ 1 (10), 63a (1). The case of Chamberlain v. Greenleaf, 4 Abb. N. C. 178, relied on by the trustee in his brief, and the New York decisions, hold that the relation of a customer to a broker carrying stock for him is that of pledgor and pledgee. In Massachusetts the contract is said to be strictly conditional, to deliver so many shares on payment of so much money; that the doctrine of trover does not apply; and that, where the money was never paid, the title to have performance never accrued. Wood v. Hayes, 15 Gray, 375; Covell v. Loud, 135 Mass. 41: In Massachusetts the broker has a right to pledge stock he is carrying as security for his own debts, and such pledge does not constitute a breach of the contract. Covell v. Loud, supra.

The question in this case would seem to resolve itself into an ascertainment of the time when the creditor's title to have performance accrued, or, in other words, when the rights of the parties were fixed. It is a subject of common knowledge that voluntary assignments are frequently resorted to as expedients to tide debtors over their difficulties, and are intended to be merely temporary. In fact, the letter above referred to, sent by one of the firm, would seem to indicate that this was no exception to the rule; and the creditor seems to have accepted it in the same spirit, and to have waived for the time being any insistence upon or performance of the existing contracts between him and the firm. I find that the creditor, also, did not assent to the assignment, and hence, in one sense, was not affected by its provisions; but it is settled law that the status of creditors is affected by the institution of bankruptcy proceedings, and the referee is of the opinion that the better and sounder rule in such cases would be to ignore such assignments, and to determine upon the date of bankruptcy proceedings as the time when the rights of the parties are fixed. That a voluntary assignment constitutes a fraud upon the bankruptcy act has been repeatedly held. In re Gutwillig (D. C.) 90 Fed. 475, 478; George M. West Co. v. Lea, 174 U. S. 590, 596, 19 Sup. Ct. 836, 43 L. Ed. 1098. In the latter case Mr. Justice White, in delivering the opinion of the court, cites with approval the case of In re Gutwillig, supra. Wyles v. Beals, 1 Gray, 233; Edwards v. Mitchell, Id. 239. In the latter cases Chief Justice Shaw states the disadvantages and mischiefs arising under assignments, and sets forth eight cogent reasons against them, and in favor of the regular methods of administration. Inasmuch, therefore, as the court of bankruptcy exists for the purpose of enforcing the bankruptcy act, and not voluntary assignments, the referee is of opinion that the only true rule to be followed in this case is to adopt the date of bankruptcy proceedings as the time when the rights of the parties were fixed, and when the creditor was entitled to make a tender and demand fulfillment of his contract. The petition to reconsider is therefore disallowed, and the question is certified to the judge for his opinion thereon, together with the evidence taken at the hearings.

Dated at Boston this 12th day of October, 1900.

James M. Olmstead, Referee in Bankruptcy.

Elder, Wait & Whitman, for trustee.
Bancroft G. Davis, for creditor.

LOWELL, District Judge. In this case there was very slight reference by counsel to the evidence submitted with the referee's report, and his findings of fact are accepted.

The court has first to determine what was the relation of the creditor to the bankrupt, and what the nature of the contract created by the bankrupt's agreement to buy stocks on a margin. The contract was made in Massachusetts, and the law of Massachusetts governs its interpretation, determining the nature of the bankrupt's ownership in the stock bought, and of his lien upon the same. There are mercantile contracts, which, though made in a particular state, must yet be construed according to the general commercial law. Washburn & Moen Mfg. Co. v. Reliance Marine Ins. Co. (Sup. Ct.; October term, 1900) 21 Sup. Ct. 1, 45 L. Ed. ——. In some cases it may be hard to determine whether a given contract be of this sort or of the commoner sort governed by local law, but a contract for the purchase of stocks on a margin appears to me plainly of the latter class. The court has, therefore, to determine what was the nature of this contract according to the law of Massachusetts. In many, perhaps in most, states the relation of a broker who has bought stocks on a margin to the stocks so bought is that of a

pledgee for his customer's debt. Jones, Pledges, § 495. This appears not to be the case in Massachusetts. In Wood v. Hayes, 15 Gray, 375, a broker bought stocks for a customer without any advance from the latter. Subsequently the customer and broker settled an account, and found a balance due the latter of a certain sum of money, for which the customer gave the broker his note. The broker acknowledged that he held as security for the note a certain number of shares of stock. The broker died, and his representative called upon the customer for a settlement. The customer had never demanded the stock or offered to pay the note. The broker had pledged the stock, which had fallen in value; and the customer sought, by way of defense to the action brought against him, to charge the broker with the value of the shares at the time of their purchase, by reason of their conversion by the broker. Chief Justice Shaw said:

"The doctrine of trover does not apply. Lobdell [the broker] advanced the money to buy the shares for account of Wood, and held the shares in his own name. It stood on the footing of contract. The contract was strictly conditional, to deliver so many shares on payment of so much money. The money was never paid and the title to have performance never accrued. There was no claim for the balance. But as the balance was in favor of Lobdell's estate when he died, the result of this case is, judgment for the defendants."

In Wood v. Hayes there certainly was a pledge in writing of the stock, acknowledged by the broker, and accepted by the customer. The purchase was not on a margin, no advance having been made by the customer. Chief Justice Shaw laid stress upon the fact that the broker held the stock in his own name. Apparently he meant to decide that, where a broker advances the money to pay for stock ordered by his customer, his contract is simply to deliver the stock when the customer makes demand and tenders payment of the price current at the time the contract was made. In such case the broker's contract is like that of one who agrees to sell and deliver stock on demand at a fixed price. This original contract made by the broker was not deemed to have been modified by the subsequently given note and pledge. As the stock stood in the broker's name, it may be that the pledge was deemed purely equitable, so that no dealing with the stock by the broker could be a conversion of it. Possibly the great chief justice for once, like a lesser lawyer, saw his conclusion so plainly that he neglected somewhat the steps by which he reached it. The decision in Wood v. Hayes, if it stood alone, would have no great bearing on the case at bar. See Jones, Pledges, § 498; Day v. Holmes, 103 Mass. 306, 311. It has received an interpretation in subsequent decisions which goes far to establish the law in Massachusetts regarding the purchase of stocks on a margin.

In Covell v. Loud, 135 Mass. 41, a stockbroker bought stock on a margin. The stock fell in value, the customer failed on demand to make good his margin, and the broker sold the stock. The customer sued for conversion. Mr. Justice Devens said:

"We are aware that transactions of this nature have sometimes been held to make the broker who purchases the stock an agent for the customer, and to treat him as holding it thereafter as a pledgee for the money advanced

for its purchase. Markham v. Jaudon, 41 N. Y. 235; Stenton v. Jerome, 54 N. Y. 480; Baker v. Drake, 66 N. Y. 518; Gruman v. Smith, 81 N. Y. 25. But in Wood v. Hayes, 15 Gray, 375, it was held that a broker who advanced money to buy stock for another, and held it in his own name, might, so long as he had not been paid or tendered the amount of his advances, pledge it as security for his own debt to a third person, without making himself liable to an action by his employer, and this upon the ground that the contract was conditional to deliver the shares upon the payment of the money. It cannot make any difference that, in this case, a small portion of the money necessary for the original purchase was advanced by the customer."

The decision in Covell v. Loud might have been put solely on the ground that, upon the customer's failure to keep good the margin, the contract of pledge gave the broker, as pledgee of the stock, a right to sell it in the manner adopted, but the court reached its conclusion by another ratio decidendi. Mr. Justice Devens asserted that, by virtue of the decision in Wood v. Hayes, the relation of pledgee did not exist, and that a broker buying on a margin may pledge the stock so bought as security for his own debt, or may part with it altogether by an absolute sale. In Covell v. Loud the court went further than in Wood v. Hayes. To hold that the contract of a broker, who has agreed to buy with his own money stock for a customer, should be deemed a contract to deliver the stock on payment of a fixed price, is one thing; and to hold that this is the nature of the contract where part of the price is advanced by the customer is another. Mr. Justice Devens declared that the variation in the circumstances made no difference. Again, in Wood v. Hayes it was decided that to repledge the stock was no conversion. In Covell v. Loud it was held no conversion to make an absolute sale. It is true that the learned judge, in a paragraph following that just quoted, went on to show that, even if the transaction were treated as creating a pledge, yet the decision of the case would not be changed; but, in showing this, he merely stated an alternative ground on which the decision might be rested. That Covell v. Loud established the rule in Massachusetts that a broker who has purchased stock on a margin for a customer is not a pledgee thereof is recognized in Jones, Pledges, § 498.

In Weston v. Jordan, 168 Mass. 401, 47 N. E. 133, a broker had purchased stock on a margin, and had pledged it for a sum greater than the debt of his customer to him. Mr. Justice Allen said:

"When a broker buys shares on a margin and carries them for his customer, it has been held in some states that the relation between the customer and the broker is that of pledgor and pledgee. Markham v. Jaudon, 41 N. Y. 235; Skiff v. Stoddard, 63 Conn. 198, 26 Atl. 874, 28 Atl. 104, 21 L. R. A. 102; Brewster v. Van Liew, 119 Ill. 554, 8 N. E. 842. This view has not hitherto been accepted in Massachusetts. Wood v. Hayes, 15 Gray, 375; Covell v. Loud, 135 Mass. 41. The defendant seeks to have these decisions reconsidered; but the facts of the present case do not call for such reconsideration of the general doctrine."

The supreme court of Massachusetts thus recognized again the rule laid down, or supposed to be laid down, in Wood v. Hayes, but apparently there was doubt in the mind of the court concerning the correctness of the rule. A federal court, bound to follow the decisions of a state court, may be pardoned some perplexity in the face of these expressions of doubt. But to hold that a broker is the

pledgee of stock bought by him on a margin would revolutionize the theory and practice of stockbrokers in Massachusetts. If a stockbroker is the pledgee of this stock, then, in the absence of authority from the pledgor, he cannot rightfully transfer the stock to another by way of sale, or by way of collateral security for an amount greater than that due him. Indeed, if the pledgee makes any transfer of the pledge in Massachusetts, it seems that his act is criminal. Pub. St. c. 203, § 72. Yet it is matter of common knowledge that honest brokers in Massachusetts pledge stock bought and carried by them on a margin for their customers, as a security for their own debts, regardless of the amount of the customer's debt to them. To hold that in so doing they convert the stock and render themselves liable to indictment is a conclusion to be avoided if possible. Again, the persons to whom the stock is pledged by the broker are understood to hold it until the broker's debt to them is discharged, irrespective of the state of accounts between the broker and the customer. This is true, though the pledgee knows that the stock was bought on a margin. Under all the circumstances, I prefer to follow the deliberate expression of opinion of the supreme court of Massachusetts, which is in accord with the custom of brokers in Massachusetts, rather than a mere doubt of the correctness of its own decisions expressed by that court.

If, then, the relation between the customer and the broker is not that of pledgor and pledgee, it remains to consider what is the nature of the contractual relation between them. It was urged in argument before me that the opinion in Weston v. Jordan requires the broker always to have on hand shares enough to meet the customer's order, but this is not the true interpretation of the opinion. There the court first said that by the law of Massachusetts the broker's relation was not that of pledgee, and then it went on to say that even if he were to be deemed a pledgee, as he is in New York, yet the consequences contended for by the customer would not follow. "Under the doctrine as held in New York, Wheatland was bound always to have on hand enough shares to meet the purchase for Jordan." 168 Mass. 405, 47 N. E. 134. It was nowhere intimated in Weston v. Jordan that under the Massachusetts doctrine such an obligation is imposed upon the broker. Indeed, the Massachusetts doctrine plainly implies the contrary. Can it be said that a broker has on hand or under his control stock which is pledged to a third party for a sum greater than the debt of the customer to him? I think not. Yet both cases and daily practice support the broker's right to repledge in this way, and custom, at least, supports the right of the broker's pledgee to hold the stock against the customer. As has been said, Wood v. Hayes and Covell v. Loud assert, if they do not decide, that the contract between the customer and the broker, even where the former advances part of the price, binds the broker to no more than this: To deliver the stock to the customer at any time that the customer tenders the balance of the price. There is no obligation resting on the broker to buy shares in the first instance, or even to refrain from disposing of them during the existence of the contract, so long as he delivers them

when the customer tenders the money and demands performance. In Covell v. Loud it is said, indeed, that by the contract the broker agrees "to purchase and hold or carry" the stock in question. What is the difference between a broker's "holding" stock and "carrying" it is not stated, but apparently an obligation is recognized, binding the broker to do something before the stock is finally demanded. The custom of brokers probably recognizes a like obligation. I hardly think they would consider that one of them fulfilled his contract unless he purchased at once the stock for which the customer put up the margin. And I think they would consider that one of them exceeded his rights if at any time he was without some shadow of title to the stock he was supposed to be carrying. He might both practically and legally put this stock out of his control by pledging it for his general indebtedness. His power to recover it might depend upon the solvency of others. Yet some interest in the stock carried he is deemed by brokers under obligation to retain. In Covell v. Loud, however, the controversy concerned not pledging, but selling; and Mr. Justice Devens, after speaking of the broker's contract to hold or carry, treated this obligation as compatible not only with the broker's right to pledge the stock for his general debts, but also with the right of absolute sale. The court has to determine if a broker, agreeing to buy stock on a margin, agrees to buy at once the stock ordered, and during the existence of the contract to retain some interest in it, however slight that interest may be, or may, on the other hand, sell the stock bought, as well as pledge it for an amount larger than the customer's debt to him. On the one hand, there is the language of Mr. Justice Devens concerning the contract to hold and carry stock, and there is a vague impression of obligation on the part of brokers. On the other hand, there is the ratio decidendi of Covell v. Loud, which treated the sale of stock as analogous to pledging it. There is the language of the opinion in Wood v. Hayes, adopted by the opinion in Covell v. Loud as applicable to the purchase of stock on a margin; and there is the difficulty, in logic and common sense, of distinguishing between a pledging of stock for the broker's debts generally, and a parting with all interest in it. However the contract be construed, difficulties will arise, and the decision be unsatisfactory. Even if it be held that the transfer of the shares here made by the broker to his general assignee was in some sense a violation of his contract with his customer, yet it would seem that the customer could not at once maintain an action for that violation, without a proper demand. That demand was not made here, and so this case is distinguished from Weston v. Jordan, where it was said by the court:

"After Wheatland had parted with the control of the shares, and after repeated demands for them by Jordan and refusals by Wheatland to deliver them, Jordan had a valid ground of action against Wheatland, either for breach of contract or for a conversion; it matters not which. If Wheatland had refused on demand to deliver the shares when they were high, and they had afterwards fallen in value, we cannot accede to the defendant's contention that Wheatland could still have compelled Jordan to take them up, and pay the balance of the cost. But Jordan's right of action against

Wheatland had accrued; and this was a debt which would be provable in insolvency against Wheatland."

In the absence of stronger indications, I must take these words to imply that under a Massachusetts contract no right of action accrues to the customer until after demand. As no demand was made in this case by the customer after the general assignment, it follows that no right of action accrued to him. By this construction of the contract the customer is deprived of no practical advantage which he would enjoy under a rule requiring the broker always to retain some shadowy right in the stock, while permitting him to pledge it for his own debts to an unlimited extent. If the broker is solvent, the customer is protected in any case. If the broker is insolvent, he is protected in neither case. The general assignment made by the bankrupt, standing by itself, did not, therefore, constitute a conversion of the customer's stock, or a breach of the broker's contract, giving rise to an immediate and unqualified right of action. It was urged that the assignment was such a refusal to perform the contract as to justify a suit for its breach brought at once by the creditor. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. Even if this be true,—and no opinion is expressed upon the question,—yet the creditor was not required to treat the contract as broken by the broker's refusal to perform. "It seems reasonable to allow an option to the injured party either to sue immediately, or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party, and cannot be prejudicial to the wrongdoer." Hochster v. De la Tour, 2 El. & Bl. 678, quoted in 178 U. S. 10, 20 Sup. Ct. 784, 44 L. Ed. 957. Here the creditor did not exercise his option to treat the contract as broken, if any such option he had.

It follows that at the time of the bankruptcy there was a subsisting obligation on the part of the broker towards the customer. If this be so, it is argued that the obligation was not broken by the act of bankruptcy, and now subsists. The discharge in bankruptcy will not then free the broker from his liability, and after his discharge the obligation will still burden him. Can this be true? Can a broker who has bought stock on a margin for a customer be held upon his contract after his discharge in bankruptcy, provided the customer has not made proper demand and tender of payment before adjudication? Even if the customer's claim be in some sense contingent, and even if the bankrupt act does not permit the proof of contingent claims in general, so that in this case the creditor might keep the contract alive against the bankrupt even after discharge, if he saw fit to do so, yet I think the creditor can at any rate treat the contract as broken by the act of bankruptcy, and prove his claim. Bankruptcy does not work a breach of all contracts. In some cases the benefit of the contract does not pass to the trustee. Streeter v. Sumner, 11 Fost. (N. H.) 542. In others the trustee may adopt the contract, and thus keep it alive. But this case is wholly outside the classes mentioned. Not only has not the trustee adopted the contract in this case, but manifestly he could not do so; for to adopt

it would be a preference of this creditor, and an injustice to all others. That in a case like this the creditor may treat the contract as broken by bankruptcy seems to me obvious, and in this instance the creditor has done so. I am of opinion, therefore, that the contract was broken at the time of the adjudication, and that the measure of damages is to be fixed as of that time. The decision of the referee is affirmed