## In re SWIFT et al.

### Ex parte HARRIGAN.

(District Court, D. Massachusetts. March 21, 1902.)

No. 2,745.

1. BROKERS—BREACH OF CONTRACT TO DELIVER STOCKS—SUFFICIENCY OF DEMAND.

A broker who was carrying stocks for a customer, which he had bought on a margin, made a general assignment; and a few days afterwards the customer wrote him, asking the amount of his account, which he did not know, and stating that he would remit the amount and take up the stocks. No action was taken by the broker or assignee on such letter, the stocks having been previously pledged by the broker and sold by the pledgee; and the broker was subsequently adjudged a bankrupt. *Held,* that the letter constituted a demand, the failure to comply with which was a breach of the contract, and gave the customer an immediate right of action; it being shown that he was able and willing to pay the amount due from him to the broker.

2. SAME—MEASURE OF DAMAGES.

The measure of damages for the breach of a contract by a broker to deliver stocks on demand of a customer, for whom he had bought the same on a margin, is to be determined according to the highest intermediate value of the stocks between the default and a time after the customer has notice thereof reasonably sufficient to enable him to replace the stocks.[1]

In Bankruptcy. On review of decision of referee.

Robert K. Dickerman, for creditors.

Freedom Hutchinson, trustee, pro se.

LOWELL, District Judge. The creditor was a customer of the bankrupts in their business as stockbrokers. The bankrupts had bought, and were carrying for the customer, certain stocks, worth more than the customer's debt to the bankrupts. These stocks had been pledged by the bankrupts to other creditors. On December 27, 1899, the bankrupts made a general assignment, and the creditor had notice of it at the time it was made. On December 30th the creditor wrote to the bankrupts as follows:

"Lowell, Mass., Dec. 30th, 1899.

"E. C. Hodges & Co., Exchange Bldg., Boston—Gentlemen: I have on account with you two hundred shares Isle Royal Mining Co., one hundred shares Butte & Boston Mining Co., C. F. S., and fifty shares Tamarack Mining Co., J. S. H., and fifty shares Tamarack Mining Co., C. H. H. Will you please send me a statement of the amount I owe on these stocks, and I will send funds sufficient to cover the amount due, and will take up the certificates.

"Very truly, Geo. M. Harrigan."

The following circulars were sent by the common-law assignee, and received by the creditor:

"Boston, January 10, 1900.

"To the Creditors of E. C. Hodges & Co.—Gentlemen: E. C. Hodges, Frederick Swift, and E. F. Lowry, doing business under the firm name of E. C. Hodges & Co., did on the 27th day of December, 1899, execute

---

[1] See Brokers, vol. 8, Cent. Dig. §§ 27 [d], 36 [a, i, j].

to me an assignment of all their property, in trust for the benefit of their creditors, without preference or priority except as provided by law. I have accepted the trust. A general meeting of the creditors will be called at an early day, of which you will receive notice. To expedite a settlement of affairs, I ask you to send me a statement of your account, made up to this date, and also to sign and mail to me as soon as possible the inclosed assent to the assignment.

"Yours respectfully,                              Geo. C. Dickson,
"53 State Street, Room 823.           Assignee of E. C. Hodges & Co."

"Dear Sir: On Saturday, Jan. 13, 1900, I mailed you a statement of the assignment of E. C. Hodges & Co., with the request that you assent to said assignment; and, not having received a reply, I beg to advise you as follows: More than one-half of the creditors have assented. At the same time, I do not feel justified in continuing under the assignment unless it is assented to by all parties in interest. In other words, if the creditors prefer to petition the firm into bankruptcy, it is within their power, and it would seem to be time wasted to continue under the present arrangements if this is the wish of any of the creditors; but, from the examination that I have been able to make of the affairs of E. C. Hodges & Co., I believe it to be for the best interests of the creditors to assent to the assignment, and, when the condition of the affairs of Hodges & Co. are presented before them, if it should then be the wish of the creditors to petition the firm into bankruptcy, they can do so without any loss of their rights. My position as assignee is simply to hold the property until the creditors meet and decide what is best to be done. Under this assignment no persons' rights can be prejudiced in any way, but all are alike protected. I make the above statement, believing it will be for your best interests to sign the within assent; and, not receiving a reply to this letter, I will understand that, as far as your claim is concerned, you prefer that the firm be petitioned into bankruptcy.

"Very truly,                              [Signed] G. C. Dickson, Assignee."

The creditor took no further action until after the adjudication, May 7, 1900, which was made on an involuntary petition filed April 6th. The stocks carried were sold by those creditors of the bankrupts to whom they were pledged on December 27 or 28, 1899. Their value was greater on April 6th than on December 27th or 28th. The question here raised concerns the amount of proof to be allowed. Of what date is the value of these stocks to be taken? In Re Swift (D. C.) 105 Fed. 493, affirmed as Hutchinson v. Dee (C. C. A.) 112 Fed. 315, it was held that the value of the stocks carried for another customer of these bankrupts was to be taken as of April 6th. The court has here to determine, therefore, if the facts of this case differ materially from those of Hutchinson v. Dee. In that case there was correspondence which, in the opinion of the court of appeals, "makes it clear that both the bankrupts and Dee, in effect, agreed to regard the assignment as not definitive, and that each held everything in abeyance until the decisive blow was struck by the proceedings in bankruptcy." "Voluntary assignments," said the court, "are frequently resorted to as expedients to tide debtors over their difficulties, and intended to be merely temporary; that the letters referred to indicate that this case falls within that observation; and that the parties waived, for the time being, insistence on the performance of the existing contracts. Therefore the rights of the parties, as fixed by the law, necessarily relate to the bankruptcy proceedings." 112 Fed. 315, 320. In its opinion this court said, "As no demand was made in this case by the customer after the general

assignment, it follows that no right of action accrued to him." 105 Fed. 500. In Weston v. Jordan, 168 Mass. 401, 405, 47 N. E. 133, 134, it was said by the supreme court of Massachusetts:

"After Wheatland had parted with the control of the shares, and after repeated demands for them by Jordan, and refusals by Wheatland to deliver them, Jordan had a valid ground of action against Wheatland either for breach of contract or for a conversion. It matters not which. If Wheatland had refused on demand to deliver the shares when they were high, and they had afterwards fallen in value, we cannot accede to the defendant's contention that Wheatland could still have compelled Jordan to take them up and pay the balance of the cost."

There is nothing in Chase v. City of Boston (Mass.) 62 N. E. 1059, to modify the earlier Massachusetts cases in their application to the case at bar.

Did the creditor in this case make upon the bankrupts a "demand," in the sense in which that word is used in the cases above cited? No formal tender was made, but none could be made, for the creditor did not know just how much he owed the bankrupts. It seems that his demand was like that made in Weston v. Jordan, and relied on by the court in deciding that case. When either broker or customer "has made a voluntary assignment for the benefit of creditors, or gone into bankruptcy, or perhaps when he has committed some other notorious act of insolvency," said the circuit court of appeals in Hutchinson v. Dee, "he has parted with the control of his assets; and the law assumes, as is the fact, that his ability to perform his contracts has terminated, and that a demand and tender would be futile, and ordinarily an action may at once be brought." 112 Fed. 320. If this be true, a fortiori demand and tender need not have that formality which is required in some other cases. It was found as a fact that the creditor was both able and willing to pay the bankrupts his debt due them on December 30, 1899, when his letter was written. I am of opinion, therefore, that in this case the creditor has not "waived, for the time being, insistence on the performance of the existing contracts," but that, on the contrary, he has demanded the delivery of the shares carried for him, and has exercised his election to treat the contract as broken. His failure to notice the assignee's letters does not indicate that he modified his position as definitely declared in his letter of December 30th. Had the shares fallen in price between December 28, 1899, and April 6, 1900, the broker could not have compelled the creditor to take their reduced price in satisfaction of his claim.

It remains to be determined if the value of the shares should be taken as of December 28, 1899, or as of some date thereafter, but prior to April 6, 1900. The rule of damages stated in Galigher v. Jones, 129 U. S. 193, 200, 9 Sup. Ct. 335, 32 L. Ed. 658, binds this court, even though it be shown that some of the text-books and cases there relied on lay down a rule quite the opposite of that which they are cited to support. Following Galigher v. Jones, this court has to determine what is a "reasonable time" for the purchase of the stocks in question. These appear to have been of the "active" sort, and doubtless could have been bought at any time. If there was a

rise in their price within a day or two after December 30th, the creditor may, perhaps, be entitled to the benefit of it, and the referee may receive evidence on that point.

The judgment of the referee is reversed and the matter of the claims of Harrigan, Sullivan, Harris, and Hansen is referred back to him, with instructions to proceed in accordance with this opinion. In the case of Lyons the correspondence was not precisely the same as that quoted above, but the difference is not material to the decision. The same order must be made in this matter as in the rest.