NOBLE H. HILL *vs.* WIRT X. FULLER & others.

Suffolk.　January 26, 1905. — May 19, 1905.

Present: KNOWLTON, C. J., MORTON, LORING, & BRALEY, JJ.

*Equity Jurisdiction*, Contribution, Laches.　*Equity Pleading and Practice*, Amendment, Costs.　*Contribution.*

The fact that a portion of a joint debt remains unpaid is no defence to a suit in equity by one of two joint debtors who has paid the principal portion of the debt against the other for contribution, where the collection of the portion of the debt unpaid is barred by the statute of limitations and the creditor has acquiesced in a practical ending of his claim.

Under Chancery Rule 25 of the Supreme Judicial Court a fact occurring after the filing of a bill in equity which makes good the plaintiff's right to relief may be set up by amendment.

If property given by one of two joint debtors is accepted at a valuation as payment of the joint indebtedness that indebtedness is ended, and a bill in equity by the debtor who gave the property will lie against the other for contribution.

Although a plaintiff after filing a bill in equity delays more than six years before filing an amendment which is necessary to complete his right to relief, and delays more than four years after a master's report has been made in his favor before setting it down for confirmation, yet, if the defendant at any time could have brought the case to trial and has failed to do so, he cannot object on the ground of laches to a decree awarding costs to the plaintiff.

The plaintiff in a suit in equity by one of two joint debtors against the other for contribution is none the less entitled to costs because he delayed the filing of his bill four years and eight months.

BILL IN EQUITY, filed July 20, 1894, and amended by leave of court on September 19, 1900, as described below.　The bill was against Wirt X. Fuller, individually, and Wirt X. Fuller and Theodore P. Harding, copartners doing business under the name of Fuller, Harding and Company.　In this report the word "defendant" is used to designate the first named defendant.

The following statement of the case is taken from the opinion of the court:

This is a bill in equity by which, as amended, the plaintiff seeks contribution from the defendant for a payment made by him on a joint debt.　The case was sent to a master, who made a report in favor of the plaintiff.　Exceptions were taken by the defendant.　These exceptions were overruled and a final decree

was entered, directing the defendant to pay the plaintiff the sum of $2,601.42, with interest from November 7, 1889, amounting to $2,292.63, together with costs in the sum of $51.38. The case is here on an appeal from that decree.

From the master's report it appeared that the plaintiff and the defendant bought and sold stocks for about a year, on joint account, through a firm of brokers by the name of Cordley and Company. Finally, by an order given on December 21, 1888, the balance of stocks carried for them by the brokers was sold. The result was a joint debt due to the brokers from the plaintiff and the defendant, amounting on that day to $5,444.93.

During and after this period the plaintiff had employed the same brokers to buy and carry stocks for him on his separate account, and on November 7, 1889, there stood to his credit in that separate account $3,388.33, and two bonds worth $1,040 each. On that day the plaintiff drew a check for $2,875 upon the brokers against his individual account, stating that this was at least equal to half the amount then due on the joint account, and tendered it to the brokers in payment of his liability on the joint account, requesting them to look to the defendant for the other half. This the brokers refused to do, saying "that they had applied the plaintiff's private account in part liquidation of the joint account." The amount then due to the brokers on the joint account was $5,733.81, and the amount due from the brokers on the plaintiff's separate account was $5,423, taking the two bonds at their market value.

Upon the brokers refusing to take this check and clear the plaintiff from the joint debt, the plaintiff brought two actions against them, one in contract for the $3,388.33, and the other in tort for the conversion of the two bonds. In both actions the brokers set up these three defences : (1) payment, (2) that it was agreed between the plaintiff and the brokers that "said account of the plaintiff declared on might be held as security for and applied by the defendants in satisfaction of the account of the plaintiff and said Fuller, and that the defendants have so applied the same," and (3) a declaration in set-off for $5,733.81. The cases were heard by a judge of the Superior Court without a jury, and on November 7, 1892, the judge found for the defendants in both actions.

The bill now before us was filed July 20, 1894.

The report further states that the plaintiff never made any further demand upon the brokers for the money or bonds, the subject of these two actions, and never received them or any part of them; but that on January 1, 1890, and from time to time until July 13, 1894, the brokers delivered to the plaintiff and the defendant monthly statements of their joint account. The last statement (as given in the report) credits the plaintiff and the defendant with a balance of $6,863.15 on October 1, 1892, to which is added interest for one year, nine months and thirteen days, amounting to $741.40, making a total of $7,604.55. Apparently there is a mistake here. On the facts stated in the report the account should have been debited with that amount. On July 13, 1894, the brokers also delivered to the plaintiff a statement of his individual account, in which he is credited with a balance of $4,333.52 on October 1, 1892, with semiannual coupons on the two bonds, paid in November and May, and also with interest for one year, nine months and thirteen days, making a total of $5,007.77. To this is added: "Collateral. $2,000 South Boston Railway five per cent bonds. All held against Fuller and Hill, joint account, showing balance due us in the sum of $7,604.55."

The master's report concludes as follows: "The foregoing are all the facts which appeared before me tending to show what disposition may have been made of the cash or bonds which stood to the plaintiff's individual credit.

"I find that on the 7th day of November, 1889, there was due Cordley & Co. on joint account, $5,733.81. I find Cordley & Co. on this day had to the credit of the plaintiff's private account, $3,388.33 and two South Boston Railway bonds worth $2,080 in all, the value of $5,468.33, and if I am warranted as a matter of law on the foregoing facts to find that there had been an application and payment of this sum of $5,468.33 upon the joint account, I so find.

"I further find that such payment would exceed the plaintiff's share of the joint account in the sum of $2,601.42, which sum under such circumstances the plaintiff should recover from the defendant Fuller with interest from Nov. 7, 1889.

"If, however, I am not warranted on the foregoing facts to

find that the plaintiff paid said sum of $5,468.33 to said Cordley & Co., I find that the accounts between the plaintiff and Cordley & Co., and the plaintiff and Fuller and Cordley & Co. have never been settled and adjusted and that the plaintiff has contributed nothing towards the payment of the joint account and under such circumstances I shall find for the defendant Fuller."

*W. M. Stockbridge*, (*G. C. Hodges* with him,) for the defendant Fuller.

*R. Levi*, (*H. L. Baker & M. Freiman* with him,) for the plaintiff.

LORING, J. [After the foregoing statement of the case.] We are of opinion that the finding made by the master was warranted by the evidence.

The defendant has objected that however it may be with the $3,388.33 due to the plaintiff on his separate account, there is nothing on which a finding can be made that the bonds were applied to the joint debt on November 7, 1889. The defendant relies in support of this objection on the fact that what the brokers are reported to have said on the day when the plaintiff tendered them half the joint debt was that "they had applied the plaintiff's private account in part liquidation of the joint account"; and he argues that all that the word "account" can mean is the $3,388.33. But if these two bonds were being carried by the brokers for the plaintiff they were technically a part of that account. See in this connection *Covell* v. *Loud*, 135 Mass. 41; *Weston* v. *Jordan*, 168 Mass. 401, 404; *Chase* v. *Boston*, 180 Mass. 458; *Rice* v. *Winslow*, 180 Mass. 500, 502, 503. In addition to the legal relations of the parties, such an account, in the language of the street, includes the securities which are being carried by the broker for his customer. The report therefore is correct, both in law and in the practice of the street, when it says that the plaintiff dealt with the brokers "in a similar way upon his private account, upon which on November 7, 1889, there was to his credit, subject to his check, in cash, three thousand three hundred eighty-eight and 33-100ths dollars (3,388.33) and two South Boston Railway five per cent bonds." If any doubt could be entertained on that point, it is removed by the finding of the judge of the Superior Court in favor of the brokers when the

plaintiff brought an action of trover against them for conversion of these two bonds. The defendant has argued that that finding may have been based on a failure to prove a demand and refusal. But on this report there is no room for that argument. The only defences set up by the brokers were payment and the application by agreement of the separate account to payment of the joint account, and a declaration in set-off. The allegations of the declaration not having been denied stood admitted. R. L. c. 173, § 35. On the facts reported there was no payment apart from the application of the separate account to the joint account; and a set-off cannot be made in an action of tort. The only defence left is that the separate account had by agreement been applied to the joint debt. This must have been held to mean that the whole account, including the two bonds which were being carried by the brokers for the plaintiff had been so applied.

So far the case stated in the report was a clear one. What raises a doubt is the fact that monthly statements of both accounts subsequently were rendered by the brokers which were wrong, if the above explanation is correct. We are of opinion that the master was justified in inferring that in the rendering of these accounts a mistake had been made. It is to be noticed that no such statement was rendered after the bill now before us was filed.

The defendant's next objection is that after the application of the plaintiff's separate account to the payment of the joint debt on November 7, 1889, there was a balance still due on the joint debt of $265.48; that a bill cannot be maintained for contribution until the whole joint debt is paid, or at any rate unless the plaintiff deducts the amount remaining unpaid, in which connection he refers to *Brinley* v. *Kupfer*, 6 Pick. 179, and *Williams* v. *Henshaw*, 11 Pick. 79, 84, 85. Assuming that to have been the situation when the bill was filed in July, 1894, it would seem that the statute of limitations has long since run against the brokers, and on the report the brokers must be taken to have acquiesced in that as the practical ending of all claims on their part, and the action can now be maintained. That an action may be maintained if outstanding debts due the partnership are barred see *Williams* v. *Henshaw*, 12 Pick. 378, 380. A fact occurring after the filing of the bill which makes good the plain-

tiff's cause of action may be set up by amendment. Chancery Rule 25.

The defendant's next defence is that even if the bonds were accepted in payment by the brokers at their market value, this is not a payment. If property is given and accepted at a valuation as payment of a joint indebtedness, that indebtedness is ended, and an action for contribution can be maintained.

The defendant insists that this is not so because it is held that in an action for contribution the plaintiff does not make out a case by showing that he has given the creditor his non-negotiable note, as was admitted in *Amos* v. *Bennett*, 125 Mass. 120. See *Davis* v. *Parsons*, 157 Mass. 584. But the reason for that is because the debt due the creditor is not thereby ended.

Lastly, the defendant asks us to modify the decree as to costs, because the plaintiff delayed four years and eight months before filing the bill now before us, six years and two months before making the amendment on which alone this bill can be maintained, and over four years after the master's report was made before it was set down by him for confirmation. So far as these last two delays go, if the plaintiff was guilty of laches the defendant is open to the same charge. If the defendant had thought that on the whole it was better for him to do so, he could have brought the case to trial at any time. He seems to have preferred the benefit of delay to avoiding the chance of having to pay six per cent interest. We see no reason for differing from the Superior Court in awarding costs to the plaintiff notwithstanding the first delay.

*Decree affirmed with costs.*