BOSTON SAFE DEPOSIT AND TRUST COMPANY *vs.* IVERS
S. ADAMS.

IVERS S. ADAMS *vs.* BOSTON SAFE DEPOSIT AND TRUST
COMPANY.

Suffolk.    November 5, 1915. — June 21, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Equity Jurisdiction,* To compel transfer of shares to pledgee.    *Corporation,* Foreign, Transfer of shares.    *Pledge.    Uniform Stock Transfer Act.*

Where the owner of shares in a foreign corporation deposits the certificate for the shares with a stockbroker as additional margin to secure his account, signing his name on the back of the certificate below certain extracts from the articles of association of the corporation but signing no power of attorney and failing to comply with the requirements of the foreign law in regard to transfers of shares, expressing at the time of the deposit a willingness to sign a proper transfer when requested by the stockbroker to do so, and where the stockbroker pledges this certificate of shares to a trust company to secure a loan to him, and thereafter the stockbroker becomes bankrupt and the trust company then demands from the original pledgor a transfer of the shares to it, if at that time the stock transactions have come to an end and the pledgor owes nothing to the stockbroker on account of margin and refuses to make the transfer and demands from the trust company the surrender of the certificate, a bill in equity by the trust company to compel a transfer of the shares to it will be dismissed, and upon a cross bill by the original pledgor the trust company will be ordered to deliver the certificate to him.

In the case above described it was *said* that, although the provision of the uniform stock transfer act contained in St. 1910, c. 171, § 9, relating to the transfer of certificates of shares does not apply to a transfer of shares in such a foreign corporation, yet the general rule of equity applicable to the case is stated correctly in § 9.

BILL IN EQUITY, filed in the Superior Court on November 27, 1914, praying that the defendant might be ordered to execute a transfer to the plaintiff of a certificate for one thousand and eighty-five ordinary shares of one pound each of the Linen Thread Company, Limited, which was deposited with the plaintiff by Gay and Sturgis on June 12, 1913, with other securities as security for a loan of $10,000 made to them by the plaintiff on that day; also a

CROSS BILL, filed in the Superior Court on January 14, 1915, by Ivers Shepard Adams, the defendant in the first case,

against the Boston Safe Deposit and Trust Company, the plaintiff in the first case, praying that that trust company might be ordered to deliver to the defendant Adams as the plaintiff in the cross bill the certificate of shares mentioned above.

The case was heard by *Morton,* J., who made the findings of fact which are stated in the opinion. He ruled as matter of law that the plaintiff trust company was entitled to the relief prayed for by it, and reported the case for determination by this court upon the pleadings and the findings of fact with an agreement of counsel that, if the ruling of law was right, a decree should be entered for the plaintiff trust company in accordance with a form agreed upon, and that, if the ruling was wrong, the bill should be dismissed with costs for the defendant and such decree should be entered upon the cross bill as justice might require.

*W. G. Thompson,* (*J. W. Lund & G. E. Mears* with him,) for Adams.

*C. K. Cobb,* for the Boston Safe Deposit and Trust Company.

LORING, J. The plaintiff's contention (as we understand it) is that the signature of the defendant below "Extracts from Articles of Association shewing dividend and capital rights of the several Classes of Shares" is a transfer in blank which the plaintiff had a right to complete by writing in above the defendant's signature a proper transfer to itself, as in the case of a negotiable note on the back of which the payee writes his name when he sells the note to another. The argument of the learned counsel for the plaintiff in this connection is that the only reason why the plaintiff has resorted to a court of equity is that there is no room to write in a transfer between the termination of the "Extracts from Articles of Association shewing dividend and capital rights of the several Classes of Shares" and the defendant's signature. The short answer to this contention is that the defendant did not sign his name on the back of the certificate at the end of "Extracts from Articles of Association shewing dividend and capital rights of the several Classes of Shares" as a transfer in blank to be filled in by the plaintiff. That is in effect contradicted by the finding of the judge. The judge found that: "The certificate of stock in question was delivered on June 12, 1913, by the defendant to Gay and Sturgis, brokers, as additional margin to secure the defendant's account. It was signed by the defendant on the back, but no

power of attorney was given by him nor did he comply with the requirements of the English law in regard to transfer as stated in the ninth paragraph of the bill. He expressed to Gay and Sturgis at the time when he deposited the certificate with them a willingness, however, to do so when they so requested. There was no evidence of any such request having been made to him until after the bankruptcy, when the plaintiff made such request." Under these circumstances it is not necessary to consider this contention further.

In the recent case of *Herbert* v. *Simson*, 220 Mass. 480, it was held that where the delivery of a certificate for shares in the capital stock of a corporation is handed to another without a transfer of the certificate and of the shares represented thereby, a valid gift may be made of that certificate and of those shares. In such a case the donee acquires the equitable title to the shares with a right to compel a formal transfer of the legal title. In view of that decision it must be taken to be settled that when the defendant handed to Gay and Sturgis this certificate for his shares in the Linen Thread Company, Gay and Sturgis became in effect the equitable mortgagees of the shares with the right to call for a transfer of the legal title. Under the findings of the judge, the certificate was handed by the defendant to Gay and Sturgis not because the defendant was then indebted to Gay and Sturgis (for, under the findings, he was not then indebted to them) but because by the contract between a customer and a stockbroker carrying shares for the customer on margin it is the duty of the customer to furnish the broker with a margin for his protection in case of a decline in the price of the stock carried and to enable the broker to borrow the money required to carry the account. In borrowing money a margin is necessary and for that reason and for the protection of the stockbroker the customer has to furnish the broker with securities even though the customer's account is good in the sense that the securities bought are worth more than the purchase money paid for them.

Although no specific finding is made to that effect it must be taken on the judge's report that, on their bankruptcy, Gay and Sturgis ceased to perform their contract of carrying the stocks which they had agreed to carry for the defendant. The judge found specifically that at the time of their bankruptcy Gay and Sturgis were indebted to the defendant irrespective of the certificate here

in question.  It follows that at that time the defendant would have been entitled to receive the certificate here in question from Gay and Sturgis if the certificate had been in their hands then. *In re Swift,* 105 Fed. Rep. 493.  *Unity Banking & Saving Co.* v. *Bettman,* 217 U. S. 127.

This brings us to the question whether the intervening pledge by Gay and Sturgis with the plaintiff trust company gives the trust company greater rights against the defendant than Gay and Sturgis would have had had the certificate remained in their hands. What Gay and Sturgis got from the defendant (when the defendant delivered to them without a transfer of it the certificate here in question as margin on his account) was a right in the nature of an equitable mortgage with a right to have the legal title transferred to them so that they would be the apparent owners of the certificate and the shares represented by it and so be in a position (in accordance with the custom) to borrow money in their own name on the strength of the certificate and the shares represented by it without regard to the state of the account between them and the defendant.  In place of perfecting their title and so putting themselves in a position to do this, Gay and Sturgis assigned to the plaintiff their unperfected rights in the certificate and the shares represented by it.  What they assigned to the plaintiff was something in the nature of an equity or a chose in action.  That the plaintiff knew.  Or at least it was chargeable with knowledge of that fact by reason of the fact that the certificate and the shares represented by it had not been transferred by the defendant, the owner of it and them.  That is to say, what Gay and Sturgis had was an equity or chose in action.  All that Gay and Sturgis had to give to the plaintiff trust company was an equity or chose in action.

In case of the assignment of an equity or of a chose in action an assignee gets and can get no greater rights than his assignor had.  The plaintiff trust company could have called for a transfer of the certificate and of the shares represented by them.  If the defendant was not bound to make a transfer to the plaintiff trust company it was at least bound to make one to Gay and Sturgis to enable them to make a repledge of the certificate independently of the state of the account between them and the defendant.  But the trust company did not do so.  It

chose to rest content with an assignment of the equitable right or chose in action which Gay and Sturgis had. When Gay and Sturgis became bankrupt it undertook to enforce Gay and Sturgis' equitable right or chose in action. The equitable right of Gay and Sturgis to compel a transfer of the legal title had then come to an end, as we have already held. As assignee of Gay and Sturgis the plaintiff's equitable right was no greater than theirs.

In this case the plaintiff was not misled by the defendant. From the state of the certificate the plaintiff knew or was chargeable with knowledge that the certificate and the shares represented by it had not been assigned by the defendant and that all that it was getting was an equitable right.

We are of opinion, therefore, that the plaintiff trust company has no right to compel the defendant to transfer to it the legal title to this certificate and to the shares represented by it.

The uniform stock transfer act (St. 1910, c. 171) does not apply to this case. This follows from the provision of § 22 as to the meaning of the word "certificate" in that act. See in this connection Braley, J., in *Barstow* v. *City Trust Co.* 216 Mass. 330, 334. The same result would seem to follow from the provisions of § 23. But although that act does not apply to this case, we are of the opinion that the rule set forth in § 9 is the rule which obtained at common law.* Under the provisions of that section the same result would follow.

It follows that the ruling of law made by the judge was wrong and that in accordance with the terms of the report a decree should be entered dismissing the bill with costs. It also follows that a decree should be entered on the cross bill directing the trust company to deliver to the defendant the certificate here in question.

*So ordered.*

---

* St. 1910, c. 171, § 9, is as follows: "The delivery of a certificate by the person appearing by the certificate to be the owner thereof without the indorsement requisite for the transfer of the certificate and the shares represented thereby, but with intent to transfer such certificate or shares shall impose an obligation, in the absence of an agreement to the contrary, upon the person so delivering, to complete the transfer by making the necessary indorsement. The transfer shall take effect as of the time when the indorsement is actually made. This obligation may be specifically enforced."