BLANCHE M. LEONARD *vs.* THE BOSTON FIVE CENTS SAVINGS BANK & another.

Suffolk.    November 9, 1931. — December 29, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Mortgage,* Equitable.    *Pledge,* Stockbroker's loan.    *Stockbroker.*

In a suit in equity against a bank and the trustee in bankruptcy of a stockbroker to establish title in the plaintiff to a certain certificate for thirty-one corporate shares in possession of the bank, the following facts appeared: The plaintiff in marginal transactions with the stockbroker deposited cash and a certificate for thirty-one shares of the stock accompanied by a signed transfer blank.  Through error, the broker sold such shares.  Later the broker borrowed money from the bank upon a collateral security note giving the bank upon breach of condition by the broker a right to sell the security without notice, and, as part of such security, delivered to the bank a street certificate for thirty-six shares of stock of the same corporation.  Upon the plaintiff's discovery that the broker did not have his stock, the broker requested the bank to transfer thirty-one of the thirty-six shares of the stock it held to the plaintiff's name, and such transfer was made into the certificate which was the subject matter of the suit, the bank retaining the certificate and the plaintiff thereafter receiving dividends on the shares.  The plaintiff never indorsed the certificate. The broker defaulting on his note, the bank caused all the collateral to be sold excepting the thirty-one shares standing in the plaintiff's name, which could not be sold because not indorsed.  There was a

balance due the broker from the plaintiff which the plaintiff was willing and offered to pay. The broker then became bankrupt. The bank in its answer sought to compel indorsement of the certificate by the plaintiff. Even if the shares claimed by the plaintiff were applied to the debt due the bank from the broker, that debt would not be satisfied. A decree was entered that the bank should deliver the certificate to the plaintiff upon his paying it the amount due from him on the account with the broker. The bank appealed. *Held,* that

(1) Although, when the stock was transferred to the name of the plaintiff, the bank still held possession of the certificate, it then knew it was the plaintiff's stock, and, the certificate not being indorsed, all it had was the right that the broker had therein, which included a right to demand indorsement by the plaintiff so that the broker could be the apparent owner and be in position to borrow in his own name on the strength of the certificate independently of the state of the account between him and the plaintiff;

(2) That right of the broker, which he had transferred to the bank, ceased upon the broker's bankruptcy, neither he nor the bank having before that demanded such indorsement;

(3) Upon the ceasing of such right, there remained with the bank only the equitable right which the broker had had to apply the stock to satisfaction of the balance due the broker from the plaintiff;

(4) In the circumstances, the rights which the bank had in the "street" certificate, never owned by the plaintiff, which was pledged with it and exchanged by it at the broker's request in part for a certificate in the name of the plaintiff, did not give it the right to have the certificate issued in the plaintiff's name converted into a "street" certificate for its benefit;

(5) There was no error in the decree, and it was affirmed.

BILL IN EQUITY against The Boston Five Cents Savings Bank and the trustee in bankruptcy of Dowling, Swain & Shea, Incorporated, filed in the Superior Court on February 20, 1931, and afterwards amended, described in the opinion.

In its answer as amended, the bank sought to have title to the certificate in question established in it.

The suit was heard by *Weed,* J. Material facts found and a decree ordered by him are stated in the opinion. In accordance with his rulings and order, a final decree was entered by order of *Lummus,* J. The defendant bank appealed.

The case was argued at the bar in November, 1931, before *Rugg,* C.J., *Pierce, Wait, Sanderson,* & *Field,* JJ., and afterwards was submitted on briefs to all the Justices.

*M. H. Sullivan,* (*James F. Sullivan* with him,) for The
Boston Five Cents Savings Bank.

*C. H. Baldwin,* for the plaintiff.

SANDERSON, J.   In this suit the plaintiff seeks to have
her title established to certificate number B45277 for thirty-
one shares of the stock of the American Telephone and
Telegraph Company held by the defendant bank, herein
referred to as the bank, and an order that it be delivered
to her.

The trial judge made a report of material facts in which it
appears that early in 1928 the plaintiff opened an account
with Dowling, Swain & Shea, Incorporated, stockbrokers,
for trading in stock on margin, depositing at the time $720
in cash and a certificate for thirty-one shares of American
Telephone and Telegraph Company stock.   Certain se-
curities were purchased and carried by the broker for her
account, and in the statements rendered her from time to
time it appeared that thirty-one shares of American Tele-
phone and Telegraph Company stock as well as securities
purchased were being carried for her.   Late in 1929, by
some mistake, the broker sold and transferred her thirty-
one shares of stock.   Upon learning from the telephone
company in December, 1929, that her shares had been
transferred, she brought the matter to the broker's atten-
tion, the mistake was acknowledged, and it promised her
that the matter would be straightened out.   She did not
receive a dividend in April, 1930, and when she directed
the broker's attention to this fact she was paid the amount
of the dividend by the broker's check.   Thereafter she
received directly from the telephone company checks for
all dividends declared.   In May, 1930, she was told by the
broker that her telephone certificate was at the bank for
safe-keeping.   Beginning with January 2, 1930, the broker
borrowed money of the bank from time to time upon the
broker's notes.   These borrowings were represented by
seven different transactions, the last being in March, 1930.
The collateral was expressed to be "for the payment of this
or any other liability, direct or indirect, joint or several, of
the undersigned, whether now due or to become due, or

that may hereafter be contracted." As a part of the collateral enumerated as deposited with a note for $10,000, dated February 7, 1930, were thirty-six shares of American Telephone and Telegraph Company stock, and the broker, by letter bearing the date of the note last mentioned, requested the bank to have thirty-one of these thirty-six telephone shares transferred to the plaintiff and five shares to another named person. The bank caused this to be done, and, upon receiving the new certificates one for thirty-one shares numbered B45277 issued to the plaintiff and the other for five shares issued to the other person, on February 13 notified the broker of their receipt, adding "These securities have been placed with the collateral held here as security for your loans." On or about February 11, 1930, the plaintiff received a letter from the telephone company advising her that a certificate for thirty-one of its shares numbered B45277 had been issued in her name.

Much of the collateral originally deposited was withdrawn from time to time by the broker and other collateral substituted. Early in June, 1930, the collateral held by the bank on the broker's loans fell below the required amount, and the broker failed upon the bank's demand to deposit additional security. On June 26 the bank sent to an auction brokerage company for sale all the collateral then held by it on all these loans, including the certificate for thirty-one shares of telephone stock issued to the plaintiff. No notice of the proposed sale was given to the plaintiff by the bank, but the terms of the collateral notes expressly provided that no notice of such sale need be given. This certificate for thirty-one shares was returned to the bank by the brokerage company because not indorsed by the plaintiff or accompanied by an assignment signed by her. The proceeds of all the collateral that was sold were indorsed on one of the collateral notes, and the collateral originally deposited to secure the particular note of February 7 for $10,000 yielded less than $4,000. No payment had been made by the broker to the bank on any of the notes prior to the sale on June 26 except a payment of $800 in April, 1930. On June 24, 1930, an involuntary petition in bankruptcy was filed against the

broker, and it was subsequently adjudicated a bankrupt. The parties agreed that at the time of bankruptcy the market value of telephone shares was $202, and that after deducting the market value of the securities then carried by the broker for the plaintiff's account from the amount which she then owed she would have owed the broker $1,780.84, and that had the market value of the securities so carried and the market value of thirty-one telephone shares been applied to her account the broker would have owed the plaintiff $4,289.91. The plaintiff conceded that she is entitled to have delivered to her the thirty-one share certificate only upon paying the sum of $1,780.84. It was agreed that any amount that might have been realized on the collateral not sold on June 26, together with the market value of the thirty-one telephone shares, would have been insufficient by a substantial amount to pay the balance of the broker's notes held by the bank. The certificate for thirty-one shares numbered B45277 is in the possession of the bank and has not at any time been in the possession of the plaintiff. It is not indorsed by her, and the trial judge found that she has not signed, nor does the bank hold, nor has it ever held, any assignment or power of attorney or other instrument purporting to transfer, or to authorize a transfer of, these thirty-one shares or any of them. He further found that the thirty-six shares pledged by the broker with the bank at the time the $10,000 loan was made were "street" certificates indorsed in blank by the parties to whom issued, and that the bank at the broker's request and for its accommodation caused the transfer of thirty-one of the thirty-six telephone shares which it held as collateral for the $10,000 note of the broker, with no intention of diminishing its security or of surrendering the shares as part of the collateral for the loan. The original certificate for thirty-one shares deposited with the broker as margin in 1928 was accompanied by a transfer blank signed by the plaintiff. The trial judge found there was no special agreement between the plaintiff and the broker relative to her margin account, and that at no time, after the account was opened, to and including the bankruptcy did the broker have occasion to resort to the plaintiff's thirty-one shares to

protect the account.   Before the suit was brought the plaintiff had not made any payment or tender to the defendants or either of them, but had demanded of the bank delivery of the certificate numbered B45277.   The trial judge found as a reasonable inference that upon its bankruptcy the broker ceased to carry for the plaintiff the securities purchased for her account and that the securities so carried were sold and the proceeds applied to that account.

In addition to finding the facts already stated, the trial judge made findings and rulings in the following terms: "I rule as matter of law that the broker was authorized to repledge to secure its own loans the original thirty-one telephone shares deposited by the plaintiff as margin for her account.   I rule also that, had the broker continued in possession of said original certificate up to the bankruptcy, the plaintiff would be entitled as against the trustee in bankruptcy to the surrender of said certificate upon payment by the plaintiff to said trustee of the balance due on her account. I find and rule that the issue of the new certificate B45277 in the plaintiff's name and its delivery by the telephone company to the bank upon the broker's order and in the circumstances above described was in effect an acknowledgment by the broker of the plaintiff's title to the shares represented by said certificate, a substitution of said certificate with the plaintiff's implied consent for the original certificate deposited by her with the broker as margin for her account, and a pledge by the broker of said certificate and the shares so represented to the bank as collateral for its loan of $10,000. I rule that the bank was charged with notice of the fact that certificate B45277 was not indorsed by the plaintiff or accompanied by any transfer signed by her.   I rule further that upon the issue of said certificate B45277 the broker acquired an equitable title to said shares in the nature of an equitable mortgage with a right to call upon the plaintiff for a transfer of the legal title thereto; and that the actual delivery to the bank of said certificate upon the broker's order, although taken by the bank in good faith and for value, was in effect an assignment of a chose in action, and created in the bank the same but no greater or superior right

to said shares than the broker then possessed.  I rule also that, the bankruptcy having intervened before either the broker or the bank had called upon the plaintiff for a transfer of the legal title to said shares, the bank has now only the same right that the broker would have had if the certificate had always been in its possession up to the bankruptcy, and that the plaintiff may redeem the certificate upon payment to the bank of the balance due the broker at the time of the bankruptcy, namely, $1,780.84."

By the final decree the plaintiff's title as legal owner of the thirty-one shares of stock represented by certificate B45277 was established, subject to the equitable right of the bank to hold the same until $1,780.84 is tendered or paid to it by the plaintiff, and it was ordered that upon such tender or payment within forty days after the entry of the decree with interest from February 20, 1931, to date of tender or payment, the bank should deliver to the plaintiff the certificate in question, and that if such tender or payment was not made within forty days the bill should be dismissed.  The bank appealed from this decree.

By the transfer of title to the plaintiff on the books of the telephone company she became entitled to dividends and all other rights of owners of similar shares in that corporation.  *Baker* v. *Davie*, 211 Mass. 429, 436.  *Kennedy* v. *Hodges*, 215 Mass. 112, 114, 115.  The bank must have known that by this transfer a person with the plaintiff's name and address had become the owner.  This result would be presumed to have been intended even though the bank did not intend to diminish its security or to surrender the shares as a part of the collateral for the loan.  The case in many of its essential features is like *Boston Safe Deposit & Trust Co.* v. *Adams*, 224 Mass. 442, and is controlled by the principles therein stated.  When the stock had been reissued in the plaintiff's name at the broker's request the bank still held it as a part of the security received from the broker, but what it then had was "something in the nature of an equity or a chose in action."  *Boston Safe Deposit & Trust Co.* v. *Adams*, 224 Mass. 442, 445.  The bank was chargeable with knowledge of this fact because the cer-

tificate and the shares represented by it had not been transferred by the owner. The broker had an equity or a chose in action and that is all it could transfer to the bank. The transaction in its legal effect is the same as if the broker held in pledge an unindorsed certificate and repledged it to the bank. If the certificate in its present form had been delivered to the broker as security for her margin account, the broker would have become in effect equitable mortgagee of the shares with the right to call for the transfer of the legal title so that the broker would be the apparent owner and be in position to borrow in its own name on the strength of the certificate independently of the state of the account between it and the owner. Neither the broker nor the bank asked that such transfer of title be made but both chose to rest content with such rights as they had in an unindorsed certificate. When the broker became bankrupt this general equitable right to have the certificate transferred for its use had come to an end. It was then no longer fulfilling its agreement to carry stocks on margin for the plaintiff. Its equitable right in the stock then was limited to having it made available as security for the indebtedness of the plaintiff to it at that time and this right had passed to the bank as the result of the transactions between the broker and the bank. This equitable obligation of the plaintiff has been met by her offer to pay the amount due from her to the broker at the date of bankruptcy as a condition to the recovery of the stock and by the provision in the decree requiring that such payment be made. In the opinion of a majority of the court the rights which the bank had in the "street" certificate, never owned by the plaintiff, which was pledged with it and exchanged at its request for a certificate in the name of the plaintiff, cannot be held in the circumstances of this case as disclosed by the findings to give it the right to have the certificate issued in the plaintiff's name converted into a "street" certificate for its benefit.

*Decree affirmed with costs.*