GWEN PALLEY *vs.* WORCESTER COUNTY NATIONAL BANK.

Worcester.  March 7, 1935. — April 30, 1935.

Present: CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Stockbroker.  Pledge.*

Statements by PIERCE, J., with respect to the title of a stockbroker to securities deposited by a customer upon a margin account or purchased by the stockbroker for that account, and the pledging of such securities by the stockbroker.

Where a stockbroker in Worcester, who was not a member of the New York stock exchange, was instructed by a margin customer to purchase for his account certain stocks which were dealt in only on that exchange, it was proper for the stockbroker both to execute the order by having a correspondent who was a member of that exchange purchase the stocks for a margin account maintained by the stockbroker with the correspondent, the margin on such account being securities deposited with the stockbroker by his customers and cash obtained by pledging other securities so deposited, and also to charge the customer with the purchase price of the stocks in his account with the stockbroker, since the latter had incurred an obligation to the correspondent for the purchase price; and, the customer having been credited later with the proceeds of the stocks when they, with other securities constituting margin for the stockbroker's account with the

correspondent, were sold by the correspondent because of a general decline in the market and of the stockbroker's failure upon request to furnish additional margin, the customer was liable to the stockbroker for a balance remaining in the stockbroker's favor on their account.

Where it was proper for a stockbroker to execute an order by a margin customer to purchase certain stocks by having a correspondent purchase them for a margin account of the stockbroker with the correspondent, and to charge the purchase price to the account of the customer with the stockbroker, there was no impropriety in the circumstances in the stockbroker's charging the customer one per cent more interest on the purchase price than the stockbroker was charged by the correspondent thereon.

BILL IN EQUITY, filed in the Superior Court on October 6, 1931.

Edwin G. Norman, trustee in bankruptcy of Charles L. Riley and Michael D. Fitzgerald, was permitted to intervene. The suit was heard by *Williams*, J., upon an agreed statement of facts. Material facts, and a final decree entered by order of the judge, are described in the opinion. The plaintiff appealed.

*F. P. McKeon*, for the plaintiff.

*E. G. Norman*, for the intervener.

*G. H. Mason*, for the defendant.

PIERCE, J.   This is a bill in equity by the assignee of four customers of the stock brokerage firm of Riley, Fitzgerald and Company, adjudicated bankrupt (hereinafter referred to as the bankrupts) to recover certain bonds deposited by the customers with the bankrupts and by them pledged to the defendant bank. The trustee in bankruptcy of the bankrupts was allowed to intervene in the suit.

The case was submitted to the trial judge on an agreed statement of facts which in substance are as follows: The bankrupts for some years prior to October 29, 1929, had carried on a stock brokerage business in Worcester. They were not members of any stock exchange but were correspondents of Clark, Childs and Company, whose members were members of the New York Stock Exchange and of the Boston Stock Exchange. The plaintiff's assignors had been customers of the bankrupts for some time prior to October, 1929, under an agreement by which, upon the supplying of a twenty-five per cent margin, the bank-

rupts agreed to buy and carry stock for the customers. The customers gave their orders to the bankrupts, who in turn transmitted the orders to Clark, Childs and Company by wire. In transmitting these orders the bankrupts did not disclose the fact that they were purchasing for their customers, and the stocks which were actually purchased by their New York correspondent were purchased on a marginal account of the bankrupts with their said correspondent, which had agreed to carry stock for the bankrupts upon their maintenance of a twenty-five per cent margin. Upon receipt by the bankrupts of information that the order given by them to their correspondent had been executed, the bankrupts in turn notified their customer that the order had been executed and charged the purchase price to his account. The margin which the bankrupts maintained with their correspondent consisted of securities and cash forwarded by the bankrupts, as well as the stocks which were purchased by the correspondent. The securities deposited consisted of property that had previously been deposited with the bankrupts by their own customers. The cash deposited represented loans from banks, which were secured by pledging securities deposited with them, as margin, by their own customers. Beginning in March, 1929, the bankrupts rendered monthly statements to each customer, showing the state of his account.

The bankrupts ceased doing business on October 29, 1929, and made an assignment for the benefit of creditors. On the same date, because of a general fall in securities values, Clark, Childs and Company demanded of the bankrupts additional property to support their marginal account. No notice of this demand was given to customers of the bankrupts. The bankrupts were unable to comply with this demand, and Clark, Childs and Company began to sell out the property held by it as security for the account of the bankrupts on October 29, 1929, and continued to sell said securities until the indebtedness of the bankrupts to it was satisfied. The securities thus sold included purchases of these customers whose accounts were assigned to the plaintiff. After the sale and the satisfaction of the

indebtedness of the bankrupts to their correspondent, there was a surplus amounting to $27,198.87, which was delivered to the receiver of the bankrupts (subsequently the intervener as their trustee in bankruptcy) on November 20, 1929, and he now holds, as trustee, a balance of $14,976.76. The plaintiff's assignors were not entitled in any way to the securities returned by said correspondent to the receiver. No demand for additional margin was made by the bankrupts on these customers, who at all times up to October 29, 1929, had maintained an adequate margin.

On October 29, 1929, the bankrupts owed the defendant bank $75,709. Gradually the defendant bank made sales of the property pledged to it by the bankrupts as security for their indebtedness, and made application of the proceeds in payment of the indebtedness of the bankrupts to the bank, and continued to do so until the indebtedness was paid. After these sales and application of the proceeds, the bank held a cash surplus of $4,305.73, subject to a legitimate charge for its expenses in the sum of $350. The securities thus sold included certain bonds deposited by the assignors of the plaintiff, as well as securities deposited by other marginal customers of the bankrupts. After the termination of these sales the defendant bank also had in its possession some of the bonds sought to be recovered by the plaintiff, which had been deposited with the bankrupts by the assignors of the plaintiff. The unpaid balance owed the bankrupts on October 29, 1929, by the plaintiff's assignors was $29,653.82. This amount was reached by charging the assignors with the purchase price of the securities ordered from the bankrupts by the plaintiff's assignors, after crediting each account with proceeds of sales, at the order of each customer, of securities deposited as margin by these customers and the proceeds of sales, without their orders, of securities of theirs held by Clark, Childs and Company and sold by it in satisfaction of the bankrupts' marginal account. The bankrupts rendered monthly statements to the customers whose accounts were assigned to the plaintiff, showing in detail the transactions of the previous month and the balance claimed to

be then due to or from the customers.   After the close of the bankrupts' business such a statement was mailed at the direction of the receiver in early November, 1929, to each of the customers whose accounts have been assigned to the plaintiff.

The bankrupts before the close of their business on October 29, 1929, had hypothecated with the defendant bank bonds thus deposited with them, as also those of other customers, in the usual course of their business, as collateral security for the general loans of the bankrupts from the defendant bank.   The bank had no actual knowledge as to how the bankrupts came into possession of said bonds, and it obtained possession of them in good faith.   On May 6, 1931, the plaintiff made demand upon the defendant bank to deliver to her forthwith the bonds claimed by her bill of complaint and those now in suit.   It is agreed that the securities are owned by the plaintiff subject to a lien, if any, for the alleged indebtedness owed by the plaintiff's assignors to the trustee in bankruptcy; and that, if the claimed balances are established and were owed by the assignors of the plaintiff, the trustee in bankruptcy has the right to the possession of the bonds demanded in this suit for the purpose of selling the same to satisfy said balances, and that a decree to that effect may be entered.

After a hearing upon the agreed statement of facts a decree was made to the effect that the bonds in the possession of the defendant bank, and the balance of cash in its hands, less $350, be delivered to the trustee in bankruptcy.   From this final decree the plaintiff appeals to this court.

As the case comes before this court on an agreed statement of facts it may draw its own inferences of fact. *Donahoe* v. *Turner*, 204 Mass. 274, 275. *Stuart* v. *Sargent*, 283 Mass. 536, 541.   It is settled in this Commonwealth that in margin transactions the title to stocks purchased for a customer and carried by a broker is in the broker. *Covell* v. *Loud*, 135 Mass. 41, 44.   *Brown* v. *Rushton*, 223 Mass. 80, 83.   *Crehan* v. *Megargel*, 235 Mass. 279.   The bonds in the possession of the defendant bank which the

plaintiff by her suit seeks to have delivered to her "were some of the negotiable bearer bonds which had previously been deposited with the bankrupts by the customers whose accounts had been assigned to the plaintiff." They had been deposited with the bankrupts as collateral security on trading accounts. The indebtedness of the bankrupts to the defendant bank, for which the securities in issue were deposited as collateral, was represented by collateral notes. Copies of these notes are not printed in the record but it is stated in the brief of the defendant bank and was not questioned at the hearing before this court, that "These collateral notes are in the customary form, authorizing the holder to sell the collateral security with or without notice upon nonpayment of the obligation of the maker, and further provided that if the maker should be adjudicated a bankrupt all liabilities to said bank should become forthwith due and payable." In this Commonwealth a broker, even in the absence of a special agreement to that end, may pledge the marginal securities to secure his general loans and perhaps may do so without reference to the actual state of the accounts between him and his customers. *Chase* v. *Boston,* 180 Mass. 458, 460. *Furber* v. *Dane,* 203 Mass. 108, 116. *Boston Safe Deposit & Trust Co.* v. *Adams,* 224 Mass. 442, 445. *Leonard* v. *Boston Five Cents Savings Bank,* 278 Mass. 36. As to the bearer bonds deposited on margin by the customers and pledged by the bankrupts to the defendant bank as security for loans, there is no question but that the bank, taking these bonds in the usual course of business, in good faith and without actual knowledge as to how the bankrupts came into possession of them, was entitled to hold them for the debt they secured, and in case of default to sell them to satisfy the obligation owed to it. As between the bankrupts and the assignors of the plaintiff, the bankrupts had the power, and, within the limitation of the obligation owed to the assignors of the plaintiff, the right to rehypothecate the bonds with the defendant bank. *Rice* v. *Winslow,* 180 Mass. 500, 503. *Vail* v. *Durant,* 7 Allen, 408. *Commonwealth* v. *Stearns,* 2 Met. 343. *Commonwealth* v. *Libbey,* 11 Met. 64. *Green-*

*burg* v. *Whitney,* 245 Mass. 303.  *Furber* v. *Dane,* 203 Mass. 108.  In this connection it is important to consider the monthly statement which was issued by the bankrupts to each customer in the course of their business.  This statement bore in the upper right hand corner in small type the following: "It is understood and agreed that all securities carried on this account may be loaned by us or pledged by us in our general loans, may without further notice to you be borrowed and used in making deliveries on account of sales ordered by other customers, and may be sold or bought at public or private sale, without notice when such sale or purchase is deemed necessary by us for our protection."

As to the manner in which the bankrupts purchased stocks upon the order of their customers through their own marginal account with Clark, Childs and Company, the plaintiff contends that such proceedings were entirely unauthorized and irregular, with the result that no debt arose in favor of the bankrupts as against the customer, and that as agents the bankrupts were not entitled to reimbursement.  See *Todd* v. *Bishop,* 136 Mass. 386.  *Hall* v. *Paine,* 224 Mass. 62, 72.  In this connection it is to be noted that had the bankrupts purchased the stock outright for the customers they could lawfully have pledged these carried securities to secure their general loans and that the power extended to the "carried" stocks referred to in the monthly statement above quoted.  It is to be further noted that the stock ordered could be purchased on the New York Stock Exchange only.  In similar circumstances it has been held that a Boston broker could rightfully execute a transaction for his customers in a manner similar to that in which the bankrupts here executed their transactions.  *Bendslev* v. *Lovell,* 235 Mass. 133, 136.  *Doucette* v. *Baldwin,* 194 Mass. 131, 135.  *Papadopulos* v. *Bright,* 264 Mass. 42, 43, 47.  *Lavien* v. *Norman,* 55 Fed. Rep. (2d) 91, 93.  From the agreed statement it is also to be noted that the purchase of stocks as executed was not merely colorable, but that all stocks ordered by the customers were actually purchased by the bankrupts' correspondent and carried in the bankrupts' account.  And it does not appear that

any stocks other than those ordered by the customers and assignors of the plaintiff were carried in the bankrupts' account. *Greene* v. *Corey,* 210 Mass. 536. In these circumstances it is manifest that the bankrupts acted properly in behalf of their customers; and that, having incurred obligations to their correspondent in behalf of their customers, the bankrupts were justified in charging against the customers' accounts the amount of the purchase price of the stocks ordered. *Durant* v. *Burt,* 98 Mass. 161, 166, 167. *Chase* v. *Boston,* 180 Mass. 458, 460. *Wilde* v. *Sawtelle,* 232 Mass. 117, 122. *Lavien* v. *Norman,* 55 Fed. Rep. (2d) 91, 93, 95.

It remains to consider the rights of the plaintiff to any surplus of the bonds belonging to the plaintiff's assignors after the debt of the bankrupts to the defendant bank has been satisfied. While for the purpose of pledging and selling deposits of margins the title to such securities is in the broker, still, where the rights of the customer to reach a surplus of collateral is the question, the special title of the broker no longer exists, and the pledged property should be returned to the general owner if its identity has been preserved. *Furber* v. *Dane,* 203 Mass. 108, 116. *In re Gay & Sturgis,* 251 Fed. Rep. 420, 421. If, therefore, in the case at bar, as between the plaintiff's assignors and the bankrupts there was a balance in favor of the customers, it is clear that the plaintiff is entitled to the surplus bonds in the possession of the defendant bank. *Boston Safe Deposit & Trust Co.* v. *Adams,* 224 Mass. 442, 443, 444. *Leonard* v. *Boston Five Cents Savings Bank,* 278 Mass. 36, 43. The question then is, whether or not the indebtedness of the assignors, as appears by the records of the bankrupts at the close of business, has been paid and does not exist in fact.

The plaintiff's claim is, in substance, that the bankrupts, in executing the transactions for their customers, advanced no money of their own, but passed on to their New York correspondent as security for the bankrupts' marginal account with the correspondent, marginal securities deposited by the bankrupts' customers as well as money obtained by the pledging of other securities with banks.

The plaintiff contends on the above facts that when the correspondent satisfied the bankrupts' obligations to it by a sale of such securities, together with those purchased by the correspondent on the account of the bankrupts, the bankrupts could not charge the plaintiff's assignors with debts since the bankrupts never incurred any obligation in behalf of their customers, including the plaintiff's assignors, citing *Sheehan* v. *Marston*, 132 Mass. 161, 162. This contention is not substantial. The final statement of accounts indicating a balance in favor of the bankrupts shows the purchase price of all securities ordered by the customers from the bankrupts and purchased by the correspondent with money actually advanced by it at the request of the bankrupts, and interest thereon. On the other hand, the account of each customer was credited with the price obtained on sales of his stocks, all of the stocks having been sold before the final balance was reached in each case. In addition there was credited to each customer the price obtained by the defendant bank on sales of securities belonging to that customer. When the bankrupts ordered their correspondent to buy stocks on account of the bankrupts, they incurred an obligation to pay therefor, even though the margin securing the obligation belonged to the customers. While it may be true that the correspondent obtained satisfaction of the bankrupts' obligation by a sale of the customers' securities, it is not shown in the record that any of the securities of the plaintiff's assignors, apart from the stock purchased and carried for them, were used for this purpose. The fact that the correspondent sold out securities of other customers, perhaps in excess of the amounts owed by those customers to the bankrupts and for which the latter rendered themselves liable to their customers, cannot aid the plaintiff in diminishing the just obligation which her assignors owed to the bankrupts. While the plaintiff may have an action for breach of contract against the bankrupts, or the trustee in bankruptcy, damages for which might be set off against the indebtedness owed to the bankrupts, there is no way in which such a set-off can be made in this pro-

ceeding, since the damages that the plaintiff may claim and prove cannot be ascertained from the agreed statement of facts.

On the facts we find no reversible error by reason of the fact that the bankrupts charged in their account with the customers one per cent more interest, upon the purchase prices of securities purchased by the bankrupts' correspondent at their request to execute the orders of their customers, than they were charged by their correspondent upon such purchase prices. Copies of the accounts between the bankrupts and the plaintiff's assignors were deposited with the clerk of the Supreme Judicial Court for the use of the court. It follows that the balance claimed by the trustee in bankruptcy to be due the bankrupts is correct, and that in accordance with the agreement of the parties the trustee has the right to the possession of the bonds in suit for the purpose of selling the same to satisfy the said balance.

*Decree affirmed with costs.*