COMMONWEALTH *vs.* JOHN T. HULL.

Suffolk.    October 9, 1936. — January 2, 1937.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Larceny. Stockbroker. Practice, Criminal,* Motion for finding; Exceptions: what questions open; Sentence. *Contract,* What constitutes. *Words,* "Carried in this account."

An appeal, with an assignment of error setting forth an exception to the denial of a motion for a finding of "not guilty" on an indictment heard without jury, raised the question whether the evidence warranted a finding of guilty.

A stockbroker, employed by a firm, to whom a customer had delivered securities with instructions to sell them and to use the proceeds in purchasing certain other securities at specified prices, could be found guilty of larceny of the securities themselves if he sold them without intention to execute such power of sale but with intent to convert the securities to the use of his employer, and used the proceeds for his employer's general purposes; the mere fact that the employee did not benefit as an individual was no defence.

An account of a customer with a stockbroker cannot, by will of the broker alone, be made a margin account subjecting securities of the customer held by the broker to use as his own; consent of the customer is necessary for the creation of such an account.

The mere fact that, in statements sent by a stockbroker to his customer setting forth an account as to the broker's performance of a contract, previously made, whereby he was to sell certain securities delivered to him and to purchase others at a specified price, there was included a notice in substance that the broker had a right to use for his own purposes the securities "carried in" the account, gave the broker no such right as to the securities purchased by him and in his possession during the performance of the specified transactions.

On a margin account, prior to payment by the customer, the stockbroker could pledge the customer's stock for his own debt, and his rightful act in so doing was not converted into larceny by his subsequent inability to deliver the stock upon payment or tender.

A general sentence upon findings of guilty upon four counts of an indictment was reversed upon this court's setting aside the findings on two of the counts, where it did not appear that the sentence would have been as large had the defendant been convicted only on the two counts upon which the convictions were affirmed, even though the general sentence did not exceed the maximum which could have been imposed under any one count upon which the defendant properly was convicted.

INDICTMENT, found and returned on July 3, 1935.

The indictment was heard in the Superior Court without a jury by *Sheehan*, J. The defendant was found guilty on four counts and filed an appeal with assignments of error.

*J. C. Johnston*, (*S. Harmon* with him,) for the defendant.

*H. P. Fielding*, Assistant Attorney General, for the Commonwealth.

LUMMUS, J. The defendant was indicted in seven counts for larceny. Upon waiver of trial by jury (G. L. [Ter. Ed.] c. 263, § 6), he was tried by a judge who ordered that the trial be subject to the procedure established by G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as properly appears in the summary of the record prepared by the clerk under § 33C. *Commonwealth* v. *Robinson*, 295 Mass. 471, 472. The judge found the defendant guilty on the first, third, fourth and sixth counts, and not guilty on the others. The case comes here on appeal, with a summary of the record and a transcript of the evidence.

The defendant presented, as to each count upon which a finding of guilty was subsequently made, a motion "that the court make a finding of 'not guilty' on" said count. This was a motion, not for a ruling of law, but for a general

finding upon law and fact. Had it been granted, the Commonwealth, if it had had any right of appeal, could not have contended that the judge had ruled that a finding for the defendant was required as matter of law. *Castano* v. *Leone,* 278 Mass. 429. *Ashapa* v. *Reed,* 280 Mass. 514. See also *Pearson* v. *O'Connell,* 291 Mass. 527, and cases cited at page 529; *Keefe* v. *McCarthy,* 294 Mass. 567, 570. But the denial of such a motion has been held equivalent to a ruling that the evidence warranted a finding against the defendant. *New Bedford Cotton Waste Co.* v. *Eugen C. Andres Co.* 258 Mass. 13, 16. *Ashápa* v. *Reed,* 280 Mass. 514, 516. *Menici* v. *Orton Crane & Shovel Co.* 285 Mass. 499, 501. *Mosher* v. *Hayes,* 288 Mass. 58. *Woodman* v. *Haynes,* 289 Mass. 114, 118. *Geraci* v. *A. G. Tomasello & Son, Inc.* 293 Mass. 552, 554. See also *Moss* v. *Grove Hall Savings Bank,* 290 Mass. 520; *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164. The ignoring of the motion was equivalent to a denial. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 17, 18. It follows that the defendant's exception to the denial of these motions raised the question whether the evidence warranted a finding against him on the several counts upon which he was found guilty.

The defendant was employed by Andrew Jensen, Jr., doing business as a stockbroker under the name of Andrew Jensen and Company, and was in charge of the stockbroking operations, while Jensen himself devoted his time to a branch of the business called industrial engineering. There was evidence that the defendant participated in and controlled all the acts upon which the findings of guilty were based. The facts hereinafter stated could have been found upon the evidence.

The first count, on which the defendant was found guilty of larceny of bonds of The Cambridge Visiting Nursing Association, a charitable corporation, alleged larceny of three bonds issued by the Shell Union Oil Company, five bonds issued by Armour & Company, one bond issued by the Louisville Gas and Electric Company, one bond issued by the Consolidated Gas Company of New York, one bond

issued by the Detroit Edison Company, and one bond issued by the Pacific Telephone and Telegraph Company. On January 23, 1935, these securities were delivered to the defendant by Charles F. Toppan, the treasurer of the charitable corporation, with instructions to sell them and to use the proceeds towards the purchase at specified prices of five bonds issued by each of the following corporations; Pennsylvania Power and Light Company, Pennsylvania Railroad, National Steel Company, and Houston Light and Power Company. Within a few days after the delivery by Toppan to the defendant, he sold the bonds delivered for more than $12,500, and used the proceeds for the general purposes of Andrew Jensen and Company. He could readily have bought within a few days at the prices specified the twenty bonds which he had been ordered to buy. He did buy within a few days all but the Houston bonds, but he pledged at once all he bought to secure indebtedness of Andrew Jensen and Company, and in February, 1935, he sold them. He put the treasurer off from time to time by the false statement that he could not get delivery of the bonds bought. Finally, when tendered payment of the amount, somewhat more than $8,000, by which the price of the bonds to be bought exceeded the selling price of the bonds sold, he admitted that he did not have the bonds which he was to buy and could not make delivery. The charitable corporation got no part of the proceeds of the bonds sold.

It could be found that the defendant, though empowered to sell the securities, did not intend to execute the power when he sold them, but intended to convert them to the use of his employer, and did so. His conduct immediately after the sale was evidence of his intention in making the sale. The conversion could be found to be of the securities and not merely of the proceeds. *Commonwealth* v. *Rubin*, 165 Mass. 453. *In re Ennis*, 187 Fed. 720, 722. The fact that the defendant did not benefit as an individual is no defence. *Commonwealth* v. *Moore*, 166 Mass. 513. *Commonwealth* v. *Snow*, 284 Mass. 426, 436, 437.

The defendant relies upon the asserted right of a broker

to treat as his own any securities "bought or held" on a margin account. *Pizer* v. *Hunt*, 253 Mass. 321, 330. *Crehan* v. *Megargel*, 235 Mass. 279, 282. *Palley* v. *Worcester County National Bank*, 290 Mass. 501, 506. *Gill* v. *Hornblower*, 294 Mass. 26, 29. *Denton* v. *Gurnett & Co.* 69 Fed. (2d) 750. 41 Am. L. R. 1265. He introduced expert testimony to show that whenever a broker gives credit, even for a day, at a time when he has any securities of his customer on hand, a margin account exists. But obviously that cannot be true, and, besides, expert testimony for the Commonwealth was sufficient basis for a finding that it is not true. A broker often buys stocks and bonds for a customer and advances the purchase money, without requiring any security other than his right, the nature of which need not be discussed, to sell the stocks and bonds bought if the customer fails to pay. *Wood* v. *Hayes*, 15 Gray, 375. *Giddings* v. *Sears*, 103 Mass. 311. *Covell* v. *Loud*, 135 Mass. 41. *Brown* v. *Rushton*, 223 Mass. 80. *Bendslev* v. *Lovell*, 235 Mass. 133. *Palley* v. *Worcester County National Bank*, 290 Mass. 501. *Gill* v. *Hornblower*, 294 Mass. 26, 30. If the customer happens to have in the hands of the broker for sale or for other specified purposes other stocks or bonds, these cannot be held as a pledge for payment for the stocks and bonds purchased unless the customer so consents. Neither a margin account nor a pledge can be created by the will of the broker alone. What rights of set-off may exist after the liquidation of the stocks or bonds, is a different question. In this case the charitable corporation did not intend to engage in a margin transaction, and the defendant had no reason to think that it did.

Apparently without contradiction, the defendant showed that Andrew Jensen and Company, at the end of January, 1935, and again at the end of February, 1935, sent to the treasurer of the charitable corporation, a statement of the account. The later statement showed that the charitable corporation owed Andrew Jensen and Company $8,373.60, and that the latter was "long" bonds to the face value of $5,000 of each of the four corporations last named, a total

of $20,000. The truth was, that the bonds of three of these corporations had been sold in February, and those of the fourth had never been bought. The balance was stated on the false assumption that the bonds were on hand, ready for delivery.

In small print, in the lower right hand corner of each of these statements of account, were these words: "It is understood and agreed that all securities carried in this account may be loaned by us or pledged by us in our general loans, may without further notice to you be borrowed and used in making deliveries on account of sales ordered by other customers, and may be sold or bought at public or private sale without notice when such sale or purchase is deemed necessary by us for our protection." This provision, it is contended, justified the defendant in everything that he did, and left the charitable corporation only a civil remedy in contract against Andrew Jensen and Company.

Attempts, often successful, to fasten upon one a contractual obligation by giving him a notice to which he is taken to assent, or may be found to assent, by continuing business relations after receipt of the notice, have often engaged the attention of courts. Williston, Contracts (Rev. Ed.) §§ 90A–91. Notices of the sort in question in this case have been recognized to the extent at least of warranting a finding of consent to the use of securities by a broker for his own purposes. *Furber* v. *Dane*, 203 Mass. 108, 115. *Walters* v. *Albee*, 245 Mass. 216, 218. *Greenburg* v. *Whitney*, 245 Mass. 303, 306. *Palley* v. *Worcester County National Bank*, 290 Mass. 501, 507. *Fisher* v. *Dinneen*, 161 Md. 605. See also *McNulty* v. *Whitney*, 273 Mass. 494, 501, 502; *Heaphy* v. *Kerr*, 190 App. Div. (N. Y.) 810, affirmed 232 N. Y. 526; *Leviten* v. *Bickley, Mandeville & Wimple, Inc.* 35 Fed. (2d) 825. But the notices sent to the treasurer of the charitable corporation were not contained in any instrument purporting to be a contract, and were not followed by further business transactions that could be thought to be based upon or affected by the notices. The securities had been deposited, and

the rights of the parties fixed, on January 23, 1935. "To make the doctrine of constructive knowledge of the offer and its terms effective, the document or letter containing the qualifying provisions must be accepted by the offeree at or prior to formation of the contract." Williston, Contracts (Rev. Ed.) § 90C. *Gott* v. *Dinsmore,* 111 Mass. 45, 52. *Société de Bienfaisance St. Jean Baptiste de Millbury* v. *Worcester County Institution for Savings,* 228 Mass. 556. *Edgar* v. *Joseph Breck & Sons Corp.* 172 Mass. 581, 583. *Picard* v. *Beers,* 195 Mass. 419, 427, 428. *Otis* v. *Medoff,* 311 Penn. St. 62, 65. The judge was right in disregarding the words of these notices.

The judge was right in disregarding those words for another reason. Those words related only to securities "carried in this account." Securities which are described in debit or credit items are not necessarily "carried in" the account. Those words have reference to a margin account, in which securities are carried, either by being bought on margin or by being deposited as margin. Our law assimilates these two classes, and in general gives the broker the rights of an owner. *Crehan* v. *Megargel,* 235 Mass. 279; 282. *Palley* v. *Worcester County National Bank,* 290 Mass. 501, 505. *Lavien* v. *Norman,* 55 Fed. (2d) 91, 93. See also *Chase* v. *Boston,* 180 Mass. 458. Those words have no application to accounts which are merely a record of cash transactions, with no stock or bonds held on margin or as security, and no extension of credit beyond the time needed to ascertain the amount of the indebtedness incurred by the execution of orders to buy.

The evidence was, therefore, sufficient to warrant a finding of guilty upon the first count.

The third count, on which the defendant was found guilty of larceny of bonds of Charles F. Toppan, alleged larceny of ten bonds issued by the Bangor Hydro Electric Company. On November 5, 1934, Toppan delivered these bonds to the defendant with instructions to sell them and to use the proceeds to buy as many bonds issued by New England Gas & Electric Company as the proceeds would buy. The defendant sold the Bangor bonds on the same

day, and used the proceeds for the general purposes of Andrew Jensen and Company. He did not notify Toppan of the sale until March 15, 1935. The principles stated with respect to the first count show that a conviction on the third count also was warranted by the evidence.

The fourth count presents more difficulty. Upon this count the defendant was found guilty of larceny of certificates for corporate stock, the property of Ida M. Graham, some of them representing stock in the Monsanto Chemical Company and others stock in the Continental Can Company. This stock was bought at her order. When on November 24, 1934, she paid all that was due, she was entitled to delivery of the stock bought for her. Instead of holding it for her, the defendant pledged it for loans made to Andrew Jensen and Company, and she got very little of it. For all that appears, the stock was already pledged when she paid up the balance of her account.

There is no substantial evidence that the account of Ida M. Graham was not a margin account. She took her time about paying for the stock bought. She was charged interest on the unpaid balances. For many months she received statements of her account with the same printed words, already set forth, in the lower right hand corner. Since hers was a margin account, Andrew Jensen and Company, even in the absence of such words, had a right to pledge the stock carried in the account. "In this Commonwealth a broker . . . may pledge the marginal securities to secure his general loans." *Palley* v. *Worcester County National Bank*, 290 Mass. 501, 506. According to statements of the law to be found even in Massachusetts she was entitled as a matter of contract to have the broker keep in his possession or under his control sufficient shares and deliver them to her on payment. *Crehan* v. *Megargel*, 235 Mass. 279, 283. *Golden* v. *Proctor*, 266 Mass. 407, 411. *Denton* v. *Gurnett & Co.* 69 Fed. (2d) 750. *In re Swift*, 105 Fed. 493, 498, *et seq.*, affirmed 112 Fed. 315. *Provost* v. *United States*, 269 U. S. 443, 454, 455. See also *Goodhue* v. *State Street Trust Co.* 267 Mass. 28, 42, 43. We need not decide whether upon payment but before delivery

to her she acquired any property rights in stock of that kind held by the broker. *Gifford* v. *Eastman*, 251 Mass. 520. *Lavien* v. *Norman*, 55 Fed. (2d) 91. *Denton* v. *Gurnett & Co.* 69 Fed. (2d) 750. *In re Curtis & Sanger*, 7 Fed. Sup. 738. *Somerville National Bank* v. *Hornblower*, 293 Mass. 363, 366–367. But it is of the essence of the Massachusetts view of marginal transactions, that at least until payment the broker commits no wrong by pledging the stock for his own debt. His innocent and rightful act is not converted into a larceny by his subsequent inability to deliver the stock upon payment or tender. See *Weston* v. *Jordan*, 168 Mass. 401, 405, 407; *Markham* v. *Jaudon*, 41 N. Y. 235, 250; *In re Swift*, 105 Fed. 493, 498, *et seq.*, affirmed 112 Fed. 315; *Hammon* v. *Paine*, 56 Fed. (2d) 19; *Provost* v. *United States*, 269 U. S. 443, 455. The evidence did not warrant a finding of guilty on the fourth count.

On the sixth count the defendant was found guilty of larceny of a certificate for one hundred shares of preferred stock of Robert Gair Company, Incorporated, the property of Stanwood H. Cook. This certificate was delivered, indorsed in blank, to the defendant for Andrew Jensen and Company shortly before October 1, 1934, as collateral for a margin account. Although on September 27, 1934, Andrew Jensen and Company declared in writing that they "are to hold" the stock "against" a purchase of five hundred shares of Stein Cosmetics stock, there is nothing to show that the stock was not to have the usual characteristics of stock held on margin. Cook owed money on the account all the time, assuming that no liquidation of that stock took place. In fact, that stock was first pledged by Andrew Jensen and Company for a loan and then the certificate was used on December 15, 1934, for the purpose of making delivery on a sale of an equal number of shares made by one J. J. Mulaney. No part of the proceeds was used for the benefit of Cook. The disposition of the stock was never communicated to Cook, but as late as December 27, 1934, the defendant insisted that he had the stock certificate in the vault, and on April 22, 1935, he said that the stock had been merely pledged. At the end of October.

1934, and for several months thereafter, Cook received statements of account bearing in the lower right hand corner the printed words already set forth. Even without them, the Massachusetts view of marginal transactions leads to the conclusion that Andrew Jensen and Company had a right to use the stock as they did. *Covell* v. *Loud,* 135 Mass. 41. Traders on margin depend primarily on the solvency of the broker, rather than on rights in specific property. Cases where the securities were bought with the money of the customer, and cases arising in jurisdictions where the view taken of a purchase on margin differs from ours, are not in point. *Gorman* v. *Littlefield,* 229 U. S. 19. *Duel* v. *Hollins,* 241 U. S. 523. *Provost* v. *United States,* 269 U. S. 443. *Lavien* v. *Norman,* 55 Fed. (2d) 91. *Hammon* v. *Paine,* 56 Fed. (2d) 19. *Brown* v. *Rushton,* 223 Mass. 80. *Gifford* v. *Eastman,* 251 Mass. 520, 524. *Palley* v. *Worcester County National Bank,* 290 Mass. 501, 507. The evidence did not warrant a finding of guilty upon the sixth count.

Various requests for rulings bearing on the first count remain to be considered. Requests numbered 1 and 3 were as follows: — "1. If it appears that the defendant sold the securities referred to in the first count of the indictment in accordance with instructions received from Toppan, he is not guilty of the larceny thereof. . . . 3. If it appears that the defendant sold the securities referred to in the first count of the indictment in accordance with instructions received from Toppan, he is not guilty of the larceny thereof even though he may have intended at the time of said sale fraudulently to appropriate to his own use the proceeds thereof." Request numbered 4 is similar to request numbered 3. The judge dealt with each of these requests by stating that it was "Denied as inconsistent with facts found." No facts were expressly found with any fulness.

We have had occasion before to animadvert upon the practice, apparently founded upon a misreading of *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 18, by which a judge sitting without jury attempts to dispose of requests for rulings of law by asserting in sub-

stance that they are immaterial or inapplicable in view of the facts found by him, without proceeding to make such clear and definite findings as will demonstrate the correctness of that assertion. *Mericantante* v. *Boston & Maine Railroad*, 291 Mass. 261, 263. *Bresnick* v. *Heath*, 292 Mass. 293, 298. *Povey* v. *Colonial Beacon Oil Co.* 294 Mass. 86, 93. But in the present case it happens that we can glean enough from the record to show what the judge had in mind. He found the defendant not guilty upon the second count, which charged him with larceny of the proceeds of the sale of the securities in question. He "allowed as far as actual sale of securities is concerned" a request for a finding that "upon all the evidence it appears that the securities referred to in the first count of the indictment were sold in accordance with instructions received from Toppan." The judge evidently found what earlier in this opinion it was said that he could find, that "the defendant, though empowered to sell the securities, did not intend to execute the power when he sold them, but intended to convert them to his own use" by means of a merely pretended exercise of the power for the benefit, not of the charitable corporation, but of his employer. So far as the requests were inconsistent with the view that upon that finding the defendant could be found guilty of larceny of the securities themselves, they were properly refused.

We have now dealt with all the material questions argued. It results from what has been said, that there was no error in the findings of guilty upon the first and third counts. But there was error in the findings of guilty upon the fourth and sixth counts. As to them the findings of guilty are set aside. The judgment or sentence (*Commonwealth* v. *Millen*, 290 Mass. 406, 411) was general upon the four counts. A defendant convicted under one indictment of several offences of the same sort may be given a general sentence which exceeds the maximum sentence for any one offence. *Harding* v. *Commonwealth*, 283 Mass. 369, 373. Since in the present case the value of the property described in each count and found to have been stolen was more than one hundred dollars, the general sentence

to imprisonment in the State prison for not more than five years nor less than three years did not exceed the maximum sentence possible on one count. G. L. (Ter. Ed.) c. 266, § 30. But we cannot be sure that so large a sentence would have been imposed had the defendant been convicted only of the two offences upon which the conviction is now affirmed. The judgment must therefore be reversed (*Commonwealth* v. *Dyer*, 243 Mass. 472, 509, 510; compare *Josslyn* v. *Commonwealth*, 6 Met. 236, 240; *Claassen* v. *United States*, 142 U. S. 140; *Brooks* v. *United States*, 267 U. S. 432, 441), and the case remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*